United States Court of Appeals,

Fifth Circuit.

No. 97-10037.

Marge J. McCONATHY, Plaintiff-Appellant,

v.

DR. PEPPER/SEVEN UP CORPORATION, Defendant-Appellee.

Jan. 7, 1998.

Appeal from the United States District Court for the Northern District of Texas.

Before REYNALDO G. GARZA, KING and BENAVIDES, Circuit Judges.

PER CURIAM:

This is an appeal from a decision of the United States District Court for the Northern District of Texas, Judge Robert B. Maloney, presiding. In this case, Judge Maloney granted summary judgment in favor of the Defendant-Appellee, the Dr. Pepper/Seven-Up Corporation ("Dr. Pepper"). The Plaintiff-Appellant, Marge J. McConathy ("McConathy") timely appealed, and the matter now lies before this panel.

Background

Marge J. McConathy was employed as a benefit manager for Dr. Pepper from January 1990 to July 1993. During this time, McConathy received one formal evaluation of her job performance, in which her performance was rated as "satisfactory or fully satisfactory." McConathy suffers from a disease of the jaw known as temporomandibular joint disease, and related complications. McConathy underwent jaw surgery three times in 1991 because of this condition. As a result, she missed approximately twenty-five days

1

of work, all of which were covered by sick leave or vacation time. McConathy underwent jaw surgery again in September of 1992, in connection with complications regarding an emergency hysterectomy.

McConathy alleges that her supervisor at Dr. Pepper, Colin Quigley ("Quigley"), was not very supportive of her during this time. McConathy states that when she approached Quigley regarding the additional surgery, he became angry, and told her that she "better get well this time," and that he would "no longer tolerate her health problems." He also allegedly complained to McConathy that it was inappropriate for her to make such extensive use of Dr. Pepper's health benefits, because of her position as benefits manager. Quigley has acknowledged that he knew of her medical condition.

When McConathy returned from the 1992 surgery, Quigley allegedly pressured her to return to work before she fully recovered, and ordered her to take a business trip to St. Louis over her protest that she was still in pain from the surgery. Further, Quigley allegedly told McConathy's staff to cease communication with her regarding various business projects under her supervision. Quigley also allegedly excluded McConathy from business meetings, transferred assignments away from her, and refused to acknowledge her presence when she was with him.

To make matters worse, on June 22, 1993, a screw placed in McConathy's jaw during a previous surgery came loose. Her physician advised her to go into surgery immediately and that her recovery time would be approximately two weeks. McConathy states

2

that she tried to inform Quigley about the need for this surgery, but he ignored her, and as a result, she deferred having the surgery.

McConathy was fired on July 2, 1993, because (according to Dr. Pepper) the corporation was reorganizing her department. McConathy and a secretary were fired, and another person was hired to fill her position. Dr. Pepper has stated that the reason for this was because it abolished the position of benefits manager and needed an accountant in that section to ascertain the proper allocation of funds from 401(k) plans.[1] McConathy claims that Quigley was aware of her medical condition at the time she was fired, and that he was aware she might be eligible for disability payments or accommodations such as a lighter duty assignment. She also claims that in addition to Quigley, Dr. Pepper's staff psychologist, Quigley's supervisor, and Dr. Pepper's Chief Financial Officer were also aware of her condition. McConathy claims that a result of her termination, she lost her medical insurance, stock options, and has suffered emotional distress.

In September of 1995, McConathy filed for disability benefits with the Social Security Administration ("SSA"). In this application ("the SSA application"), McConathy stated that she was suffering from chronic pain and did not see how she could hold any position even on a part-time basis.

McConathy filed suit against Dr. Pepper in state court,

---

[1]It should be noted that Dr. Pepper did not cite any summary judgment evidence in favor of this assertion, however.

asserting causes of action of intentional infliction of emotional distress and violation of Texas public policy. She later amended her petition to include claims of harassment, discriminatory discharge, and failure to accommodate under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12213.[2] She sought compensatory and punitive damages. Dr. Pepper removed the case to federal court.

Dr. Pepper moved for summary judgment, and this was granted in an order by Judge Maloney dated December 18, 1996.[3] All of McConathy's claims were dismissed with prejudice. The decision stated that McConathy's hostile environment harassment claim was dismissed *sua sponte,* and that the discriminatory discharge and failure to accommodate claims were dismissed on the basis of judicial estoppel, in that the information given in the SSA application was inconsistent with her claims, and hence, the claims were dismissed.

McConathy filed for an appeal, on the basis that the district court erred in its decision to grant summary judgment in favor of Dr. Pepper. Specifically, McConathy attacks the district court's use of the doctrine of judicial estoppel as a basis for throwing out her central ADA claims. We do not find error in the district court's decision, and we therefore AFFIRM its decision.

---

[2]The ADA claims were based on charges filed with the Equal Employment Opportunity Commission ("EEOC"). According to Dr. Pepper, the EEOC issued McConathy a right to sue letter, but did not make a determination on her claims.

[3]It must be noted that the district court's decision was a bit unclear as to the basis for its decision on all the claims.

## Standard of Review

This Court reviews the grant of summary judgment *de novo,* applying the same criteria used by the district court. *Texas Medical Ass'n v. Aetna Life Ins. Co.,* 80 F.3d 153, 156 (5th Cir.1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c).

Similarly, this Court reviews a dismissal on the pleadings *de novo,* applying the same standard as the district court. *Truman v. United States,* 26 F.3d 592, 593 (5th Cir.1994). "Accordingly, we accept the well-pleaded allegations in the complaint as true, and we construe those allegations in the light most favorable to the plaintiff." *Id.* at 594. Dismissal is appropriate "only if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations." *Rubinstein v. Collins,* 20 F.3d 160, 166 (5th Cir.1994)(internal quotation marks omitted).

## Analysis

McConathy claims that the district court's decision to dismiss her claims of discriminatory discharge and failure to accommodate on the basis of judicial estoppel was in error. She states that judicial estoppel was inappropriate here. She further states that even if it was appropriate to apply judicial estoppel in this case, the document upon which judicial estoppel was based, the SSA

application, was not sufficiently authenticated to be worthy of use in this situation. If McConathy is correct on one of these two claims, she prevails. We do not think McConathy is correct on either claim, however.

The district court was not procedurally forbidden from entering summary judgment on the basis of judicial estoppel. Federal Rule of Civil Procedure 8(c) states that "a party shall set forth affirmatively ... estoppel ... and any other matter constituting an avoidance or an affirmative defense." FED.R.CIV.P. 8(c). It is true that this Court has stated that a defendant is supposed to raise an affirmative defense as a basis for summary judgment when the motion for summary judgment is in the initial pleading tendered by the defendant. *Funding Sys. Leasing Corp. v. Pugh,* 530 F.2d 91, 96 (5th Cir.1976). However, where "the matter is raised by the trial court that does not result in unfair surprise, technical failure to comply precisely with Rule 8(c) is not fatal," and in such a situation a court may hold that the defense was not waived. *Lucas v. United States,* 807 F.2d 414, 417 (5th Cir.1986); *see also Allied Chemical Corp. v. Mackay,* 695 F.2d 854, 855-856 (5th Cir.1983); *United States v. Shanbaum,* 10 F.3d 305, 312 (5th Cir.1994). McConathy does not argue that she was prejudiced by Dr. Pepper's failure to formally plead judicial estoppel in its answer, and we do not believe that such prejudice occurred. Therefore, the district court did not err in applying the doctrine of judicial estoppel as the basis for its grant of summary judgment.

6

McConathy further claims that even if it was appropriate to apply judicial estoppel, the SSA application was not properly authenticated, and hence, inadmissible. We disagree, and believe that the SSA application was admissible. "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what the proponent claims." FED.R.EVID. 901(a). This circuit does not require conclusive proof of authenticity, and the district court's decision is reviewed for abuse of discretion. *U.S. v. Jimenez Lopez,* 873 F.2d 769, 772 (5th Cir.1989); *U.S. v. Scurlock,* 52 F.3d 531, 538 (5th Cir.1995).

The district court based its conclusion that the SSA application was properly authenticated on the basis that (1) McConathy produced the document in response to a discovery request, (2) the document bore her signature, (3) she did not claim that the document is not authentic or that her signature is a forgery, and (4) she acknowledged in her response to Dr. Pepper's motion for summary judgment that she requested total disability benefits for certain time periods. This is a sufficient basis for the district court's decision, and we find no abuse of discretion. The fact that it appears that Dr. Pepper provided no affidavit from its counsel that the document was actually produced by McConathy is not enough to create reversible error.

This Court has held that "the application for or the receipt of social security disability benefits creates a rebuttable presumption that the claimant or recipient of such benefits is

7

judicially estopped from asserting that he is a "qualified individual with a disability.' " *Cleveland v. Policy Management Sys.,* 120 F.3d 513, 518 (5th Cir.1997). McConathy did not offer any credible summary judgment evidence indicating that, at the time of her termination, she was otherwise qualified to continue her duties at Dr. Pepper. Her statements in the SSA application say that she couldn't "see how she could hold a management position or any position even on a part-time basis." The statements in the SSA application create a presumption that McConathy is not a qualified person with a disability, and she has not provided evidence to rebut this presumption, and hence she is estopped from making such a claim.

McConathy attempts to prevent application of judicial estoppel based on the SSA application by claiming that the Supreme Court's holding in *McKennon v. Nashville Banner Publishing Co.,* 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), precludes such an application of judicial estoppel. In that case, the Supreme Court held that after-acquired evidence that showed an employee would be fired anyway did not preclude recovery under the Age Discrimination in Employment Act. *Id.* The situation is different here. According to McConathy, *McKennon* indicates that after-acquired evidence cannot be used to estop McConathy from arguing that an adverse employment decision was made because of her disability. *See Id.* at 356-60, 115 S.Ct. at 884-85. However, her statements are being used in this case in relation to her job qualifications, a matter which has nothing to do with the motivation behind her employer's

8

action. *McKennon* involves the use of after-acquired evidence for a different reason than here, and is therefore not on point.

McConathy also makes various claims about the alleged inapplicability of judicial estoppel because it supposedly violates the spirit of the ADA, is bad public policy, and that this case involves perceived disability, which she claims is somehow subject to different standards than real disability. McConathy is basically throwing in everything but the kitchen sink with these arguments, and these arguments are not reasons for reversible error.

The next issue to be dealt with is whether the district court erred in dismissing *sua sponte* McConathy's ADA hostile environment harassment claim. First of all, it should be stated that this circuit has never recognized an ADA claim based on hostile environment harassment, though other courts have done so, or have at least assumed the existence of such a cause of action. *See McClain v. Southwest Steel Co.,* 940 F.Supp. 295, 301-302 (N.D.Okla.1996); *Gray v. Ameritech Corp.,* 937 F.Supp. 762, 771 (N.D.Ill.1996); *Fritz v. Mascotech Automotive Sys. Group,* 914 F.Supp. 1481, 1492 (E.D.Mich.1996); *Henry v. Guest Serv., Inc.,* 902 F.Supp. 245, 251-252 (D.D.C.1995), *aff'd* 98 F.3d 646 (D.C.Cir.1996); *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092 (S.D.Ga.1995). In this case, we will proceed as though such a cause of action exists. However, we wish to make it clear that we do not pass on whether this circuit recognizes such a cause of action. We do not feel this is the appropriate case to make such

9

a determination, and we merely will assume such a cause of action exists for the sake of argument. This case should not be cited for the proposition that the Fifth Circuit recognizes or rejects an ADA cause of action based on hostile environment harassment.

That having been said, if we assume the existence of such a cause of action, it would be modeled after the similar claim under Title VII, in which a claimant must prove:

> (1) that she belongs to a protected group; (2) that she was subjected to unwelcome harassment; (3) that the harassment complained of was based on her disability or disabilities; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt, remedial action.

*Rio v. Runyon,* 972 F.Supp. 1446, 1459 (S.D.Fla.1997)(citing *Henson v. City of Dundee,* 682 F.2d 897, 903-905 (11th Cir.1982), which applied these factors to a hostile environment claim based on sexual harassment). In order to be actionable on a hostile environment theory, disability-based harassment, like sexual harassment, would presumably have to "be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *Farpella-Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir.1996).

McConathy has not alleged sufficiently pervasive disability-based harassment so as to state a claim upon which relief can be granted. Even if we assume everything she claims about Quigley is true, his actions, while insensitive and rude, would not be sufficient as a matter of law to state a claim of hostile environment harassment. *See DeAngelis v. El Paso Mun.*

10

*Police Officers Ass'n,* 51 F.3d 591, 595-96 (5th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 473, 133 L.Ed.2d 403 (1995)(noting that "mere utterance of an ... epithet which engenders offensive feelings in an employee" is not enough to constitute hostile environment harassment). It is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or "cold-shouldering" to the level of an actionable offense.

On a related note, McConathy's state claims of intentional infliction of emotional distress also fail. In order to succeed on this claim, McConathy must prove that her employer acted in a manner that was extreme or outrageous. *Wornick Co. v. Casas,* 856 S.W.2d 732, 734 (Tex.1993). This conduct must be so extreme as to go "beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Id.* (quoting Restatement (Second) of Torts § 46 cmt.d (1965)). McConathy has not alleged or shown such conduct on the part of Dr. Pepper or its employees. Even if Quigley was in fact generally cruel, unfair, and threatened to fire her, this does not pass muster as the type of utterly indecent, intolerable, and atrocious behavior necessary to prevail on an intentional infliction of emotional distress claim. *See e.g.: Ramirez v. Allright Parking El Paso, Inc.,* 970 F.2d 1372, 1375-1377 (5th Cir.1992); *Guthrie v. Tifco Indus.,* 941 F.2d 374, 379 (5th Cir.1991), *cert. denied,* 503 U.S. 908, 112 S.Ct. 1267, 117 L.Ed.2d 495 (1992); *Wilson v. Monarch Paper Co.,* 939 F.2d 1138 (5th Cir.1991). While it is true

11

that inter-office behavior can arise to the level of a tort of intentional infliction of emotional distress, the standard for such a claim is rather rigorous, and we will not lower that standard.

## Conclusion

Based on the foregoing, we find no reversible error in the decision of the district court to grant summary judgment in favor of the Defendant-Appellee, Dr. Pepper. Therefore, we AFFIRM the decision of the district court.

AFFIRMED.