**Jeff HILLER, Plaintiff,**

v.

**Marvin T. RUNYON, Defendant.**

**No. 1–98–CV–90017.**

United States District Court,
S.D. Iowa,
Western Division.

April 13, 2000.

Bruce Green, Council Bluffs, IA, for plaintiff.

William C. Purdy, Assistant United States Attorney, Des Moines, IA, for defendant.

### AMENDED AND SUBSTITUTED ORDER ON MOTION FOR SUMMARY JUDGMENT

PRATT, District Judge.

Now before the Court is Defendant Marvin Runyon's Motion for Summary Judgment of Plaintiff Jeff Hiller's action alleging violation of the Americans with Disabilities Act of 1991 ("ADA") and the Rehabilitation Act of 1973 ("Rehabilitation Act"). Plaintiff resisted the Motion and Defendant filed a reply brief; this matter is considered fully submitted.

### I. Statement of Facts[1]

Plaintiff Jeff R. Hiller ("Hiller") has been employed as a city mail carrier by the Council Bluffs, Iowa branch of the United States Postal Service ("CBPO") since November, 1978. Hiller is a 47–year–old male, and has been married for 13 years. He and his wife have no children. Defendant Marvin Runyon ("Runyon") was the Postmaster of the CBPO at the time of the events giving rise to this lawsuit.

In December of 1996, Hiller's right testicle began to swell, causing him severe back and leg pain, and making it difficult for him to carry mail. In January, 1997, he saw his family physician, Dr. K. Neil Sheppard, who performed an ultrasound in response to Hiller's complaints of acute swelling and pain in his right testicle. Because of the ultrasound's results, Dr. Sheppard referred Hiller to Dr. John Horgan, a urologist. After testing and exploratory surgery, Dr. Horgan determined Hiller's

right testicle was cancerous and removed it. Hiller agreed to the surgery even though his other testicle was atrophic, and his ability to father children would be substantially limited. After the surgery, Hiller remained hospitalized for a time. After Hiller's release from the hospital, he had continued complaints of discomfort in his right groin area, particularly when changing positions and lifting. Oncologist Dr. Thomas M. Schmitz administered 20 radiation treatments to him between February 24, 1997 and March 21, 1997. Hiller's side effects from this treatment included nausea, vomiting, low blood counts and extreme fatigue.

Following his surgery and during his radiation therapy, Hiller was unable to work or perform activities such as walking, and engaging in sexual relations. Hiller continued to suffer from fatigue and nausea through April 7, 1997, after which date he returned to work.

Before Hiller returned to work, his wife notified Sam Gonzales, the CBPO Postmaster, of Hiller's condition. Hiller also informed his immediate supervisor, Mark Thompson ("Thompson"), of his cancerous condition, the removal of his right testicle, and the fatigue and nausea that the radiation treatments were causing him. On or about April 21, 1997, Dr. Schmitz released Hiller to a standard 40–hour workweek and eight hour workday.

After Hiller returned to work, he was able to "case," or sort, mail at the standard rate of 18 pieces of mail per minute, 8 flats per minute, and work eight hours a day. However, he was often unable to complete his daily route in 8 hours and frequently asked Thompson for assistance. In May, 1997, Thompson began accusing Hiller, on an almost daily basis, of being unable to perform his job. Thompson also told Hiller, almost daily, that he (Hiller) had an eight hour route. This was contradicted by route inspections conducted by the

---

1. The facts are viewed in the light most favorable to the nonmoving party. *See* Fed.
R.Civ.P. 56(c); *Harlston v. McDonnell Douglas Corp.*, 37 F.3d 379, 382 (8th Cir.1994).

CBPO later in 1997, which confirmed that Hiller's route took, on average, 8 hours and 47 minutes to complete. Furthermore, Thompson repeatedly told Hiller that he was "unproductive" and "could not perform." Hiller interpreted these statements as evidence of Thompson's bias against persons with testicular cancer and, in particular, persons who have lost a testicle and who have difficulties procreating. On or about April 23, 1997, Hiller presented Thompson with a copy of the ADA and asked Thompson to stop harassing him. Thompson responded that he was unfamiliar with the ADA.

From about May 12 to May 28, 1997, Hiller was restricted to six hours per day by Dr. Sheppard, who was concerned that the pain Hiller was experiencing was related to his ongoing medical condition. During this week, Thompson and Gonzales required Hiller to report to work at 9:00 a.m., rather than his usual reporting time of 7:00 a.m. They also did not allow him to "case," or sort, his mail before beginning his route, instead having other workers case his route.

Casing is a less strenuous task which can be performed seated. By requiring Hiller to report at 9:00 a.m., and additionally not allowing him to case his mail before the route, Hiller had to perform the more strenuous route work for the full six hour day, unlike typical full-time, non-injured letter carriers, who on average cased mail for 2.5 hours and worked on their routes for 5.5 hours per day.

By May 28, 1997, Hiller had returned to working a standard 8–hour day, yet Thompson continued to harass him on a near-daily basis, accusing him of being "unproductive" and "unable to perform." On June 4, Hiller contacted the Postal Service Equal Employment Opportunity counselor. Thereafter, Thompson's harassment continued, until this suit was filed in May 1998.

Thompson was a combative manager, often criticizing and verbally challenging workers. In particular, he criticized older workers and Hiller more than others. The CBPO, through supervisor Peter Book, also attempted to prevent Hiller from attending his EEO counseling session on July 25, 1997, by wrongfully telling the counselor Hiller was absent without leave, even though Book had earlier permitted Hiller to go to the session. Book admitted later to Hiller he did not want him to go to the session. Hiller was not credited with the time considered absent without leave until September, 1997. Additionally, Book stated at one point that the CBPO would be better off if the older workers were gone. Finally, Thompson made it difficult for Hiller to request assistance on his route, and harassed him when he did so, often denying Hiller's request, only to later provide assistance. He also made it difficult for Hiller to make a request by not allowing Hiller to get an idea of mail volume before requesting assistance on his route. The harassment of Hiller distressed him, and he began treatment for depression.

## II. Summary Judgment Standard

"[S]ummary judgment is an extreme remedy, and one which is not to be granted unless the movant has established his right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances." *Robert Johnson Grain Co. v. Chemical Interchange Co.*, 541 F.2d 207, 209 (8th Cir. 1976) (citing *Windsor v. Bethesda Gen. Hosp.*, 523 F.2d 891, 893 n. 5 (8th Cir. 1975)). The purpose of the rule is not "to cut litigants off from their right of trial by jury if they really have issues to try," *Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 467, 82 S.Ct. 486, 7 L.Ed.2d 458 (1962) (quoting *Sartor v. Arkansas Natural Gas Corp.*, 321 U.S. 620, 627, 64 S.Ct. 724, 88 L.Ed. 967 (1944)), but to avoid "useless, expensive and time-consuming trials where there is actually no genuine, factual issue remaining to be tried," *Anderson v. Viking Pump Div., Houdaille Indus., Inc.*, 545 F.2d 1127, 1129 (8th Cir.

1976) (citing *Lyons v. Board of Educ.*, 523 F.2d 340, 347 (8th Cir.1975)).

The plain language of Federal Rule of Civil Procedure 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Summary judgment is properly granted when the record, viewed in the light most favorable to the nonmoving party and giving that party the benefit of all reasonable inferences, shows that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Harlston*, 37 F.3d at 382. The Court does not weigh the evidence nor make credibility determinations; rather the Court only determines whether there are any disputed issues and, if so, whether those issues are both genuine and material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. Once the moving party has carried its burden, the nonmoving party must go beyond the pleadings and, by affidavits or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(c), (e); *Celotex Corp.*, 477 U.S. at 322–23, 106 S.Ct. 2548; *Anderson*, 477 U.S. at 257, 106 S.Ct. 2505. An issue is "genuine," if the evidence is sufficient to persuade a reasonable jury to return a verdict for the nonmoving party. *See id.* at 248, 106 S.Ct. 2505. Because discrimination cases often depend on inferences rather than on direct evidence, summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant. *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir.1994) (citations omitted). This is because defendants of even minimal sophistication will neither admit discriminatory animus nor leave a paper trail demonstrating it. *Estes v. Dick Smith Ford, Inc.*, 856 F.2d 1097, 1103 (8th Cir.1988) (citation omitted).

### III. Analysis

Hiller claims that he was discriminated against in violation of the ADA, Title I, 42 U.S.C. §§ 12111–12117 and the Rehabilitation Act, Sections 503 and 505, 29 U.S.C. §§ 791 and 794a, as amended. As an employee of a federal agency, his sole remedy for disability discrimination is pursuant to the Rehabilitation Act. 42 U.S.C. § 12111(5)(B)(i); *Hargens v. United States Dep't of Agric.*, 865 F.Supp. 1314, 1323 (N.D.Iowa 1994) (federal employees not covered by ADA). However, because certain basic standards and definitions are used in both the ADA and the Rehabilitation Act, cases interpreting either act are applicable and interchangeable for purposes of analyzing claims under the other. *Allison v. Dep't of Corrections*, 94 F.3d 494, 497 (8th Cir.1996); *see* 42 U.S.C. § 12117(b). Hiller alleges discrimination based on adverse treatment and hostile work environment. His allegation of adverse treatment includes three theories of recovery: disparate treatment, failure to reasonably accommodate his handicap, and retaliation for filing a discrimination claim.

### A. Adverse Treatment

#### 1. Disparate Treatment

To survive a motion for summary judgment under the Rehabilitation Act, Hiller must show that he was: 1) an individual with a disability; 2) otherwise qualified; 3) employed by a federal agency; and 4) adversely treated solely because of his disability. *Demming v. Housing and Redevelopment Auth. of Duluth, Minn.*, 66 F.3d

950, 954 (8th Cir.1995) (citation omitted); 29 U.S.C. § 794(a). If the employee succeeds in establishing a prima facie case of disparate treatment, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the action. *Spades v. City of Walnut Ridge,* 186 F.3d 897, 899 (8th Cir.1999). If the employer articulates such a reason, the burden shifts back to the employee to present evidence that the proffered reason is pretextual. *Id.* (citing *Wilking v. County of Ramsey,* 153 F.3d 869, 872–73 (8th Cir.1998)).

There is no dispute over the second and third requirements of this analysis, i.e., that Hiller is qualified and employed by a federal agency. The Court must therefore determine whether there is a genuine issue of material fact with respect to Hiller's alleged disability and whether he suffered adverse solely because of his disability.

### a. Disability

■ "Disability" means with respect to an individual: 1) a physical or mental impairment which for such individual constitutes or results in a substantial impediment to employment; 2) a physical or mental impairment that substantially limits one or more major life activities. 29 U.S.C. § 705(9). The Code of Federal Regulations defines "major life activities" as functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working. *Krauel v. Iowa Methodist Med. Ctr.,* 95 F.3d 674, 677 (8th Cir.1996) (overruled on other grounds) (citing 29 C.F.R. § 1630.2(i)). Factors to be considered when assessing whether an individual is substantially limited in a major life activity are: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected long term impact of or resulting from the impairment. *Weber v. Strippit, Inc.,* 186 F.3d 907, 913 (8th Cir.1999).

■ Hiller alleges he is disabled within the meaning of the ADA and Rehabilitation Act because his cancer and related treatment substantially limited his ability to work, to walk and to procreate, all major life activities, and because he was regarded as having an impairment. Hiller's cancer and accompanying treatment limited his ability to work, walk and perform most daily activities from February 5, 1997 until April 21, 1997. Subsequent to that period, he returned to work with eight-hour day and 40–hour workweek restrictions. His condition also caused him to have a testicle removed, and his other testicle is atrophied. According to his doctor, his ability to father a child is severely limited. Because of its long-term effects on his ability to engage in sexual relations and reproduce, Hiller's cancer-related condition is a physical condition that limits a major life activity.[2] *See Bragdon v. Abbott,* 524 U.S. 624, 638, 118 S.Ct. 2196, 141 L.Ed.2d 540 (1998) (reproduction is major life activity); *McAlindin v. County of San Diego,* 192 F.3d 1226, 1234 (9th Cir.1999) (impotency resulting from anxiety disorders was substantial limitation on major life activity). Therefore, Hiller qualifies as an individual with a disability under the Rehabilitation Act.[3]

---

**2.** Defendant argues that Hiller's cancer has not affected his reproduction, which is a major life activity, because he had decided before the onset of his cancer not to have children. The Court is not convinced, however, that Hiller's choice should influence the Court's disability analysis. *See Bragdon,* 524 U.S. at 641, 118 S.Ct. 2196 ("In the end, the disability definition does not turn on personal choice."). Even if Hiller's choice should be considered, however, there is conflicting evidence before the Court on this issue. Statements by both Hiller and his wife indicate that the couple had left open the possibility of having children. There is a genuine issue of material fact with regard to whether the Hillers wanted children.

**3.** Because of the Court's determination that Hiller is a qualified individual with a handicap, the Court does not need to discuss whether Hiller was regarded as handicapped or had a record of being handicapped. The Court also does not reach the question of whether Hiller is substantially limited in his ability to walk or work, although the Court

### b. Adverse Employment Action.

The parties also disagree as to whether Hiller suffered any adverse treatment due to his handicap. *See Demming*, 66 F.3d at 954. Hiller's submissions to the Court establish that Defendant, through its supervisors, took the following actions against Hiller: a) required him to start his job at 7:30 a.m. rather than 7:00 a.m.; b) threatened to make him start his job at 8:00 a.m.; c) threatened to withhold auxiliary street assistance and made it difficult for Hiller to request such assistance; d) harassed Hiller almost daily because of his disability and wrongfully accused him of being "unable to perform" even though he was able to perform the essential functions of his job; e) changed his starting time from 7:00 a.m. to 9:00 a.m. for a period of time during May, 1997; f) increased the harassment after Hiller filed a formal complaint, and g) failed for months to alleviate or rectify the harassing situation despite Hiller's repeated requests.

 The Court finds that the magnitude of these actions is simply not great enough to be considered an adverse employment action under the Rehabilitation Act.[4] Any change in Hiller's work hours was temporary, minor or both. To be legally cognizable, an adverse employment action must generally be a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *See Ellerth*, 524 U.S. at 761, 118 S.Ct. 2257; *see generally Harlston*, 37 F.3d at 382 (reassignment to more inconvenient job insufficient).

### 2. Failure to Accommodate

██ Hiller alleges that Defendant failed to accommodate his disability by not pro-

viding auxiliary assistance which would allow him to complete his route within eight hours. Hiller was limited to an eight-hour work day by his physician. Hiller did, however, work occasional overtime. Yet according to Hiller's own testimony, Defendant did not require him to work overtime. Rather, Hiller worked overtime when he chose to. He has shown no need for further accommodation, aside from the eight-hour work restriction which Defendant has abided by.

### 3. Retaliation

██ ██ To make out a prima facie case of retaliation under the Rehabilitation Act, Hiller must show: 1) he engaged in protected activity; 2) he was subject to adverse action by his employer; and 3) there was a causal link between the two. *Cossette v. Minnesota Power and Light*, 188 F.3d 964, 972 (8th Cir.1999) (ADA case). As discussed above, the Court does not find that any of the indignities suffered by Hiller to rise to the level of a cognizable adverse employment action under the Rehabilitation Act. It is true that Book threatened Hiller with a letter of warning for supposedly being absent without leave when Hiller went to his appointment with the EEO counselor. However, that threat was not carried out. Therefore, Hiller is unable to make out a claim for retaliation under the Act, and the Court does not need to address the remaining elements of the claim.

## B. Hostile Work Environment

██ The Court first notes that a cause of action for a hostile work environment is proper under the Rehabilitation Act. The Eighth Circuit has assumed the existence of such a claim. *See Cannice v. Norwest*

---

notes that Hiller was restricted in his work hours and did experience some difficulty walking during the periods relevant to this action.

**4.** The Court notes that the record contains several statements attributed to supervisors

Thompson and Book which call into question their motivation for taking otherwise innocuous-appearing and relatively minor actions. These statements are discussed more fully in III.B., *infra*.

*Bank Iowa N.A.,* 189 F.3d 723 (8th Cir. 1999) (assuming existence but not reaching issue as plaintiff failed to present evidence that harassment occurred because of disability); *Wallin v. Minnesota Dep't of Corrections,* 153 F.3d 681, 688 (8th Cir.1998) (assuming existence of claim for purposes of summary judgment), *cert. denied,* 526 U.S. 1004, 119 S.Ct. 1141, 143 L.Ed.2d 209, *reh'g denied,* —— U.S. ——, 119 S.Ct. 1513, 143 L.Ed.2d 664 (1999); *Cody v. CIGNA Healthcare,* 139 F.3d 595, 598 (8th Cir. 1998) (affirming summary judgment for employer but implicitly recognizing ADA hostile work environment claim). Several district courts have explicitly found that a hostile work environment claim is valid in the disability discrimination context. *See, e.g., McClain v. Southwest Steel Co., Inc.,* 940 F.Supp. 295, 301–02 (N.D.Okla.1996); *Haysman v. Food Lion, Inc.,* 893 F.Supp. 1092, 1106 (S.D.Ga.1995).

With respect to recognition of a hostile work environment claim under the ADA, a recent Third Circuit case stated as follows:

> The ADA states that "[n]o covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to ... [the] terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).... The Supreme Court has held that language in Title VII that is almost identical to the above language in the ADA creates a cause of action for a hostile work environment.

*Walton v. Mental Health Ass'n of Southeastern Pa.,* 168 F.3d 661, 666–67 (3rd Cir.1999) (not deciding issue because plaintiff failed to state claim) (citing *Patterson v. McLean Credit Union,* 491 U.S. 164, 180, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989)). The *Walton* Court concluded that "[t]his framework indicates that a cause of action for harassment exists under the ADA." *Id.* at 667. The Rehabilitation Act uses similar language and a similar framework. Specifically, the Rehabilitation Act

states in relevant part that "[n]o otherwise qualified individual with a disability ... shall, solely by reason of her or his disability, ... be subjected to discrimination under any program or activity ... conducted by ... the United States Postal Service." 29 U.S.C. § 794(a). This Court finds the reasoning in *Walton* persuasive and applicable to this case, and holds that a hostile work environment claim is proper within the framework of the Rehabilitation Act.

■ A claim for harassment based on disability, similar to a claim under Title VII, would require a showing that: (1) Hiller is a qualified individual with a disability; (2) he was subject to unwelcome harassment; (3) the harassment was based on his disability or a request for an accommodation; and (4) the harassment was sufficiently severe or pervasive to alter the conditions of his employment and to create an abusive working environment. *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563 (5th Cir.1998) (ADA case); *Howard v. Burns Bros., Inc.,* 149 F.3d 835, 840 (8th Cir.1998) (Title VII case).

This Court finds that the fifth requirement of the above-noted test[5] has been superseded by two recent Supreme Court cases holding an employer vicariously liable under Title VII for a hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee. *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 765, 118 S.Ct. 2257, 141 L.Ed.2d 633 (1998); *Faragher v. City of Boca Raton,* 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998). At least one Court of Appeals has assumed this analysis applies to ADA and Rehabilitation Act cases. *Silk v. City of Chicago,* 194 F.3d 788, 804–05 (7th Cir.1999). Under *Ellerth* and *Faragher,* once a plaintiff has proven the first four elements of a hostile work environment, and that the harassment was at the hands of a supervisor, a defendant's only affirmative defense is to prove that: (a) it exercised reasonable

**5.** The element was whether the defendant knew or should have known of the harass-

ment and failed to take proper remedial action. *See McConathy,* 131 F.3d at 563.

care to prevent and correct promptly any sexually harassing behavior, and (b) the employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. *Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275; *Silk*, 194 F.3d at 804–05. The Court now examines whether the parties have raised any issue of material fact as to these elements or defenses.

There is no dispute that this action meets the first element of a hostile work environment, as the Court has already found Hiller to be a qualified individual with a disability. The record also compels the Court to find a genuine issue of material fact as to whether Hiller was subject to unwelcome harassment. Hiller's affidavit, deposition and other evidence indicate that he experienced harassment as often as every day or every other day, including statements that he was unproductive and "could not perform." The harassment was at times physically intimidating and often consisted of Thompson's refusal to grant him assistance for his route, both by refusing him needed assistance and refusing to allow him to look at his mail to estimate whether he needed help in the first place. The fact that Thompson eventually provided Hiller assistance does not dispel the issue of fact as to whether the initial denials constituted wrongful harassment. In fact, refusing Hiller assistance without an explanation, only to later grant the assistance, is entirely consistent with a pattern of harassment.

The parties likewise dispute the second element, whether the harassment was based on Hiller's disability or request for accommodation. There are several types of proof that support the Court's conclusion that an issue of fact has also been raised as to this element. First, Hiller's own experience indicated that the harassment began, or at least became severe, after Hiller returned from his surgery and radiation treatment. Additionally, as discussed above, the harassment often oc-

curred in response to Hiller's requests for auxiliary assistance in delivering his mail. Finally, the experiences of other workers, and comments made by management, indicate that there was a climate of hostility toward workers perceived to be disabled or unproductive due to age or disability, despite their meeting workplace standards.

Comments by management to and about other employees indicate there was hostility toward disabled workers in the workplace. In late September of 1997, Thompson stated, "We have too many cripples in our post office." A week later, he referred to a postal worker who had undergone back surgery as a "cripple." *See Phillip v. ANR Freight Systems, Inc.*, 945 F.2d 1054, 1056 (8th Cir.1991) (evidence of discrimination directed at other individuals relevant and admissible to hostile work environment claim) (citing *Hawkins v. Hennepin Technical Center*, 900 F.2d 153, 154 (8th Cir.), *cert. denied*, 498 U.S. 854, 111 S.Ct. 150, 112 L.Ed.2d 116 (1990); *Estes*, 856 F.2d at 1102).

Management also singled out workers over age 40 for harassment. Employee Ron Rohatsch ("Rohatsch"), who is over age 40, observed that he was called in by supervisors for more job "discussions" upon getting older. According to employee Richard Isom ("Isom"), Supervisor Peter Book also stated that "as soon as we get rid of these old carriers, things will get better."

In response, Defendant claims that the verbal abuse suffered by Hiller was not aimed at his protected status or that of anyone else, but rather reflected Thompson's aggressive management style. *See generally Wallin*, 153 F.3d at 688 (workplace friction not linked to plaintiff's disabilities). Defendant's contention is that Thompson and other management personnel were not singling out Hiller or individuals over age 40. However, this assertion is contradicted by several affidavits submitted by Hiller. This contradiction demonstrates an issue of fact which our law says a jury should determine.

The fact that some of the comments were directed at workers over 40 does not save Defendant from the inference that its supervisors harassed Hiller because of his disability. *See Cruz v. Coach Stores*, 202 F.3d 560, 572 (2nd Cir. 2000) ("[Plaintiff's] claim finds further support, moreover, in the interplay between the two forms of harassment."); *cf. Hafford v. Seidner*, 183 F.3d 506, 515 (6th Cir.1999) (evidence of religious harassment of plaintiff could help support plaintiff's racial hostile work environment claim); *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1416 (10th Cir.1987) (evidence of racial harassment of plaintiff may help establish her sexually hostile work environment claim). The Court specifically finds that disparaging comments made to and regarding older workers are relevant to Hiller's discrimination claim. In this context, the comments tend to show the supervisors' hostility to workers who are fully qualified to do their jobs but are not as physically able, or perceived as physically able, to perform demanding tasks as well or as quickly as younger or nondisabled workers.[6]

Additionally, if Book and Thompson began their pattern of harassment in response to their perceptions of Hiller as disabled during a time in his recovery when he was less able to perform physical tasks than his is now, and continued their antagonism toward him for a period of many months, there is clearly an issue of

---

6. Defendant has filed a Motion to Strike the affidavits of Rohatsch and Isom as based upon "irrelevant, conclusory allegations of age discrimination" in violation of Federal Rule of Civil Procedure 56(e) and various Federal Rules of Evidence. Rohatsch's affidavit consists of four paragraphs. In the first he states that he has been an employee of the CBPO since 1962. In the second Rohatsch states that the management confronted older carriers, particularly Fred Frazier, about work standards even though work standards were being met, while not confronting younger workers. In the third paragraph Rohatsch states that an unnamed employee over 40 years old was disciplined for an accident on the job while a younger had "the same type" of accident but was not disciplined. In the fourth paragraph Rohatsch states that he had not been called into the postmaster's office for a "job discussion" for at least twelve years, but one month after his fifty-fifth birthday he was called in for a "job discussion" on work production and they have not ceased. Isom's affidavit consists of only two paragraphs. In the first he states that he has been an employee of the CBPO since 1985. In the second Isom states that he heard Peter Book, a CBPO supervisor, say: "as soon as we get rid of these old carriers, things will get better."

Affidavits submitted in support of a motion for summary judgment must: (1) be made on personal knowledge; (2) set forth facts admissible in evidence; and (3) show the affiant is competent to testify to the matters therein. *See* Fed.R.Civ.P. 56(e); *El Deeb v. University of Minn.*, 60 F.3d 423, 428 (8th Cir.1995) ("Affidavits asserting personal knowledge must include enough factual support to show that the affiant possess that knowledge."). In addition, general or conclusory statements without detailed facts are insufficient. *See Berg v. Bruce*, 112 F.3d 322, 327–28 (8th Cir.1997). The Court finds that paragraph 2 of Rohatsch's affidavit is general and conclusory and does not provide enough factual support to show how the affiant possesses the knowledge therein. Therefore, paragraph 2 should be stricken. Paragraph 3 is most likely specific enough because it alleges a particular incident, although no names or dates are provided, nor are details of the accident. Again, however, no factual basis is given for the affiant's personal knowledge of this situation. Therefore, paragraph 3 should also be stricken. Paragraphs 1 and 4 comply with the Rule 56(e) requirements and are sufficiently specific. Isom's affidavit complies with the requirements of Rule 56(e) and is sufficiently specific.

Defendant makes the additional argument that the statements in the affidavits would be inadmissible under evidentiary rules. This Court disagrees. Paragraph 2 of Isom's affidavit reports a statement by a supervisor at the CBPO, and as such is clearly an admission by a party opponent, a hearsay exception under Federal Rule of Evidence 801(d)(2). And while paragraph 2 of Isom's affidavit and paragraph 4 of Rohatsch's affidavit might at first seem to be irrelevant because Hiller alleges disability, not age, discrimination, this Court has found above that disparaging comments made to and regarding older workers are relevant to Hiller's disability discrimination claim. Therefore, only paragraphs 2 and 3 of Rohatsch's Affidavit should be stricken and are not relied on by this Court.

material fact as to Defendant's improper motivation in continuing to harass him. The Court notes that discrimination cases often depend on inferences rather than direct evidence, and therefore summary judgment should not be granted unless the evidence could not support any reasonable inference for the nonmovant. *See Crawford*, 37 F.3d at 1341. The Court finds that there is a genuine issue of material fact as to whether the harassment of Hiller was based on his disability or a request for accommodation.

Next, for harassment to affect a term, condition or privilege of employment, it must have been "so severe or pervasive as to alter the conditions of the victim's employment and create an abusive working environment." *Wallin*, 153 F.3d at 688 (citations omitted); *Burns*, 149 F.3d at 840. As noted above, Hiller has cited several specific instances of verbal and other harassment in support of his claim. There are several factors that make the harassment in this case objectively and subjectively abusive, including its timing. In this case, Hiller, a recent cancer and radiation treatment patient, returned to work subject to restrictions and easily fatigued. Yet Thompson berated, challenged and intimidated him on a daily basis when he would request assistance on his route. During these challenges, Thompson physically got within six inches of Hiller's face. He repeatedly told Hiller that he had a "pud" route and that he "could not perform." As noted above, Hiller was at times later granted the assistance. This abusive conduct continued for many months.

Additionally, Thompson was objectively wrong in repeatedly telling Hiller he should have been able to do his route in eight hours; the route was eventually evaluated and shown to take 45 minutes longer than that. Most employees would be frustrated upon hearing repeatedly from a supervisor that one's route was shorter than one knew it to be. The power relationship inherent in the employment context, coupled with Thompson's abrasiveness, would make this situation extremely difficult for any reasonable worker in Hiller's shoes.[7]

■ The language Thompson used to harass Hiller, including that Hiller was "unproductive" and "could not perform," can also have a particularly cruel and offensive double-meaning to an employee who is infertile, unable to engage in sexual relations and recovering from testicular cancer. Because of the harassment, Hiller developed depression and sought treatment with Dr. Sheppard, who prescribed him the antidepressant Luvox. The facts noted in the above discussion, taken together, require the Court to conclude that the harassment of Hiller was severe and pervasive.

As to the fifth element, no evidence has been submitted to prove an affirmative defense.[8] There is no evidence that Hiller unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to otherwise avoid harm. In fact, Hiller took the lead in attempting to remedy this situation short of legal action by discussing it with management, including CBPO Postmaster Sam Gonzales, and consulting with an EEO counselor. Additionally, Defendant makes no allegation that Hiller failed to exhaust internal remedies. The record shows that the only resistance to such steps came from Defendant's own supervisors. No evidence was submitted as to whether the employer exercised reasonable care.

---

7. Thompson's repeated incorrect statements, and the harshness with which he treated Hiller, also suggest his indifference to whether the route actually was the proper length, and suggest an improper motive.

8. According to the Supreme Court in *Ellerth* and *Faragher*, an affirmative defense is available only where no tangible employment action was taken against the plaintiff. *See Ellerth*, 524 U.S. at 765, 118 S.Ct. 2257; *Faragher*, 524 U.S. at 807, 118 S.Ct. 2275.

In light of the above discussion, the Court holds that Defendant has failed to demonstrate an absence of genuine issue of material fact as to the elements or defenses.

## IV. Conclusion

Based on the foregoing, Defendant's Motion for Summary Judgment (# 32) is DENIED with respect to Hiller's hostile work environment claim under the Rehabilitation Act, and GRANTED with respect to all other claims. Defendant's Motion to Strike (# 44) is GRANTED as to Paragraphs 2 and 3 of Rohatsch's Affidavit and DENIED as to all other claims.

IT IS SO ORDERED.