# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-50060
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
August 14, 2015

Lyle W. Cayce
Clerk

JEFFREY R. GORDON,

Plaintiff-Appellant,

v.

ACOSTA SALES AND MARKETING, INC.,

Defendant-Appellee.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:13-CV-662

Before REAVLEY, DENNIS, and SOUTHWICK, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Jeffrey R. Gordon ("Gordon") brought this suit against Defendant-Appellee Acosta Sales and Marketing, Inc. ("Acosta") claiming that Acosta discriminated against him in violation of the Americans with Disabilities Act ("ADA"). Upon reviewing Acosta's motion for summary judgment, the district court granted the motion and entered final judgment in favor of Acosta. We AFFIRM.

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

**I.**

Acosta is a sales and marketing company that helps various food and consumer product companies with their stock management, sales, and promotions at large retailers like grocery and drug stores. Acosta hired Gordon as a part-time retail coverage merchandiser (an "RCM") in September 2012. Gordon's responsibilities as an RCM included tracking product sales, informing store managers about their inventory, and helping promote ongoing or upcoming deals for his assigned products. Gordon set up his own schedule, usually travelling between two to three stores per day. The average travel time between stores was fifteen to twenty minutes.

Gordon has a medical condition called edema, which causes swelling of the extremities. As treatment for this condition, Gordon takes a diuretic medication, which causes frequent urination for the six to eight hours after he ingests it. In October or November 2012, Gordon informed his supervisor, Rudy Ramirez, that he had edema and that he would be seeking alternate employment within Acosta. Ramirez supported his decision. In November 2012, Gordon applied for two open administrative positions but was turned down for both of them.

In late 2012, Kraft Foods (an Acosta client) requested that Acosta provide RCMs who would work to promote Kraft products exclusively as part of a new staffing model. To accommodate this request, Acosta hired a new RCM who took on the Kraft responsibilities, which Gordon and two other RCMs previously held. Acosta notified the whole team of the change in an email on January 7, 2013. Gordon objected to the impact this decision had on his responsibilities. In order to maintain Gordon's hours, Ramirez suggested expanding the number of stores assigned to Gordon. Gordon opposed this

option because of the wear and tear additional travel would have on his vehicle. On January 8, 2013, Gordon emailed Ramirez and requested that Acosta reduce his hours to 24-per week (from 30 hours) to enable his search for alternative employment. The email did not mention Gordon's disability or that Gordon was having any difficulty performing his duties. On January 9, 2013, in response to the e-mail, Ramirez confronted Gordon while Gordon was working on-site at a grocery store and yelled at Gordon, using an expletive. Ramirez never mentioned Gordon's disability during their argument.

Gordon complained about Ramirez's conduct in an email to Ramirez's supervisor, David Osgood, and a human resources ("HR") representative, Judy Conord. Gordon mentioned filing an Equal Employment Opportunity Commission ("EEOC") charge for verbal assault and harassment but did not discuss any protected characteristic such as Gordon's disability. In a follow-up email, Gordon requested a "reasonable accommodation" of removing Gordon from the supervision of Ramirez, preferably to an administrative position. At this time, he made no mention of his disability.

Although Acosta did not provide a transfer, it did investigate and follow-up on the altercation, ultimately disciplining Ramirez. However, Gordon continued to complain that he was afraid that Ramirez would retaliate against him for reporting the incident. The only evidence that Gordon offered in support of his assertion that Ramirez engaged in further retaliatory behavior was an email concerning the late submission of his schedule. Gordon testified that the email unfairly singled him out and was accusatory in tone. However, during Gordon's deposition, Acosta's attorney presented Gordon with copies of an identical email that Ramirez sent to several other RCMs concerning the late submissions of their schedules.

On February 5, 2013, Osgood and Harvey Shaner, another Acosta employee, met with Gordon to discuss his continued concerns of retaliation by Ramirez. For the first time, Gordon mentioned his disability in conjunction with his request for a transfer. Towards the end of the meeting, Shaner made a comment suggesting that Gordon lied about his disability in order to secure the RCM position. Taking offense, Gordon terminated the meeting. Gordon reported his complaint to Conord. Shaner had no further contact with Gordon.

On February 12, 2013, Gordon informed Conord that he would be changing the scheduling of his medication in order to better manage his edema and that doing so would cause him to urinate with greater frequency. In conjunction with his change in medicine, Gordon, again, requested Acosta "accommodate" him by transferring him to an administrative position out of Ramirez's supervision. In response, Conord requested a doctor's note, certifying his condition. On March 22, 2013, Gordon emailed Conord a copy of a letter from his doctor, Dr. Quiroz, stating Gordon "requires a position that puts him in close proximity to the bathroom." Dr. Quiroz suggested that Acosta take this fact into consideration when determining whether to provide Gordon with a transfer but did not indicate that the transfer was necessary as an accommodation for Gordon's condition.

Acosta responded to the accommodation request on March 27, 2013, stating that it could accommodate Gordon in his current position as an RCM, since he had unlimited and free access to bathrooms at all times. Acosta further assured Gordon that he would not be penalized in any way for taking frequent breaks and that his supervisors were made aware of his condition. Gordon found the email to be retaliatory in nature, but instead of calling or emailing Conord to discuss the accommodation, he submitted his resignation

at 5:30 p.m. that same day.

Gordon thereafter filed suit in the United States District Court for the Western District of Texas, asserting the following four claims against Acosta: 1) failure to provide reasonable accommodation; 2) retaliation; 3) hostile work environment; and 4) constructive discharge. Following discovery, Acosta filed a motion for summary judgment, which the district court granted in its favor. Gordon appealed.

### III.

We review a district court's "grant of summary judgment de novo, applying the same standards as the district court." *Ibarra v. United Parcel Serv.*, 695 F.3d 354, 355 (5th Cir. 2012). Summary judgment is appropriate where the movant demonstrates "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### IV.

Based on a careful review of the record, the parties' respective briefs, and the district court's opinion, we conclude that Acosta's motion for summary judgment was properly granted. We address Gordon's arguments in turn.

### A. Reasonable Accommodation Claim

In order to establish a prima facie case in a failure-to-accommodate claim, a plaintiff must prove the following: "(1) the plaintiff is a qualified individual with a disability; (2) the disability and its consequential limitations were known by the covered employer; and (3) the employer failed to make reasonable accommodations for such known limitations." *Feist v. Louisiana,*

*Dep't of Justice, Office of the Att'y Gen.*, 730 F.3d 450, 452 (5th Cir. 2013) (internal quotation marks omitted). The heart of the parties' disagreement is over the third element, *viz.*, whether Acosta provided reasonable accommodation for Gordon's disability. Gordon argues that Acosta's "accommodation" was not reasonable and that the alternative he requested, being transferred to the vacant administrative position in the local San Antonio office, would have been appropriate. In response, Acosta argues that the accommodation it offered was reasonable and that it is not liable, because Gordon ended the interactive process. *See Loulseged v. Akzo Nobel Inc.*, 178 F.3d 731, 736 (5th Cir. 1999) ("[A]n employer cannot be found to have violated the ADA when responsibility for the breakdown of the 'informal, interactive process' is traceable to the employee and not the employer.") (citing *Beck v. University of Wisconsin Bd. Of Regents,* 75 F.3d 1130, 1135 (7th Cir.1996) and *Templeton v. Neodata Services, Inc.,* 162 F.3d 617 (10th Cir.1998)).

Given the record before us, we need not address whether Acosta provided a reasonable accommodation, because we conclude that Gordon's unilateral withdrawal from the interactive process is fatal to his claim. *See Griffin v. United Parcel Serv., Inc.*, 661 F.3d 216, 225 (5th Cir. 2011); *Loulseged*, 178 F.3d at 735 ("What occurred here was not a refusal of [the employer] to reasonably accommodate [the employee's] concerns, but a breakdown in the interactive process designed to create those accommodations."). Following an employee's request for reasonable accommodation, the ADA's regulations state that "it may be necessary for [the employer] to initiate an informal, interactive process with the qualified individual with a disability in need of the accommodation," so that the parties may determine the appropriate remedy. 29 C.F.R. § 1630.2(o)(3) (2015). Because both parties share the responsibility of engaging

in this process, *see* 29 C.F.R. pt. 1630, App., §1630.9 (2015), the employer is not liable when the employee is at fault for the breakdown in communication. *Loulseged*, 178 F.3d at 736.    Here, Gordon ended the interactive process by resigning within hours (5:30 p.m. the same day) of Acosta's accommodation offer rather than responding to Conord's email or contacting another individual at Acosta and explaining why an alternative accommodation was necessary. Given these particular facts, we conclude that no reasonable jury could find that Gordon was not responsible for the breakdown in the informal, interactive process.   Accordingly, summary judgment was properly granted to Acosta on Gordon's reasonable accommodation claim.

### B. Hostile Work Environment

Gordon also contends that he was subjected to a hostile work environment because of his disability.   As evidence of this, Gordon points to the altercation with Ramirez in the store, an email that Ramirez sent, and a general lack of support and training provided by Ramirez.   To ultimately prevail on this claim, Gordon must show, *inter alia*, that the harassment was "sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment." *McConathy v. Dr. Pepper/Seven Up Corp.*, 131 F.3d 558, 563 (5th Cir. 1998) (quoting *Farpella-Crosby v. Horizon Health Care*, 97 F.3d 803, 806 (5th Cir. 1996)).   Gordon's claim fails, because the summary-judgment evidence does not support a finding that the alleged harassment was pervasive or severe enough to alter the conditions of his employment. *See McConathy*, 131 F.3d at 564 ("It is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense.").   Further, even assuming *arguendo* the altercation with

7

No. 15-50060

Ramirez was sufficiently severe, Gordon's claim nevertheless fails because Acosta took quick and decisive action to remedy the problem when it investigated and disciplined Ramirez, after which no further harassment or incidents occurred. *See Indest v. Freeman Decorating, Inc.* 164 F.3d 258, 266 (5th Cir. 1999) (holding that the employer's swift response to the employee's assertion of sexual harassment forestalled the creation of a hostile work environment, and, thereby, relieved the employer of liability).

## C. Retaliation

Gordon argues that he engaged in a protected activity by threatening to take his complaints about the altercation with Ramirez to the EEOC, which resulted in an "adverse employment action," *i.e.*, Acosta's refusal of "reasonable accommodation." As set forth in the ADA, "protected activity includes opposing employment actions or practices that are unlawful under the ADA." 2 AMERICANS WITH DISABILITIES: PRACTICE & COMPLIANCE MANUAL § 7:398 (2015). Courts have recognized this includes filing charges with the EEOC alleging "discrimination on the basis of perceived disability." *See id.; Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1122 (5th Cir. 1998). However, when employees make complaints about harassment without connecting the employment practices to their disabilities, these complaints do not constitute protected activity. *See Harris-Childs v. Medco Health Solutions, Inc.*, 169 Fed. Appx. 913, 916 (5th Cir. 2006) (finding that the Appellant had not engaged in a protected activity, even though she complained of unfair treatment/harassment, because she did not demonstrate that she "put the employer on notice that her complaint was based on racial or sexual discrimination"). Thus, because Gordon's complaint about Ramirez was a personal grievance rather than a complaint resulting from illegal

8

discrimination, his claim fails. *See Alack v. Beau Rivage Resorts, Inc.*, 286 F. Supp. 2d 771, 775 (S.D. Miss. 2003) ("Although express complaints to supervisors about perceived discriminatory practices constitute protected activity,[] the wide range of protected activity clearly does not include those situations where the opposition relates not to unlawful employment practices but to a personal grievance.") (quoting *Garcia-Paz v. Swift Textiles, Inc.*, 873 F. Supp. 547, 560 (D. Kan. 1995) (internal quotations omitted)).

### D. Constructive Discharge

Evidence of "[c]onstructive discharge requires a greater degree of harassment than required by a hostile environment claim." *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 167 (5th Cir. 2007) (quoting *Brown v. Kinney Shoe Corp.*, 237 F.3d 556, 566 (5th Cir. 2001)). To ultimately prevail, Gordon has the burden of showing that his working conditions were "so intolerable that a reasonable employee in [his] position would [have felt] compelled to resign." *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 331 (5th Cir. 2004). As the district court correctly observed, the summary-judgment evidence does not support a finding that Gordon endured any of the factors cited in *Brown v. Bunge Corp*, 207 F.3d 776, 782 (5th Cir. 2000). And, although Gordon claims that he had to make a "Hobson's choice" choosing to resign over continuing to work in unworkable conditions, he actually had a third choice: continuing to engage in the interactive process with Acosta. Thus, even viewing the facts in the light most favorable to Gordon as we must at this stage of proceedings, we nevertheless conclude that the summary-judgment evidence would not support a reasonable jury in finding that Gordon was constructively discharged.

No. 15-50060

## V.

For all of the foregoing reasons, we AFFIRM the district court's grant of summary judgment in favor of Acosta.