**IN THE UNITED STATES COURT OF APPEALS**

**FOR THE FIFTH CIRCUIT**

_____

No. 98-50290

_____


THOMAS R. GONZALES,

                                        Plaintiff-Appellant,

                    versus

CITY OF NEW BRAUNFELS, Texas, Acting by
and through the New Braunfels Police Department,

                                        Defendant-Appellee.

_____

Appeal from the United States District Court
for the Western District of Texas
_____

May 20, 1999

Before JOLLY, WIENER, and PARKER, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Thomas Gonzales appeals the district court's grant of summary judgment dismissing his employment discrimination claims against the City of New Braunfels on the alternative grounds that Gonzales either (1) is not disabled or (2) is not qualified to perform the essential functions of a police officer, with or without accommodation. Following a de novo review of the record, we affirm.


I.

**FACTS AND PROCEEDINGS**

Gonzales was hired as an officer with the City of New Braunfels Police Department ("NBPD" or the "department") in April 1982. Approximately two years later, in May 1984, he was diagnosed with insulin-dependent diabetes mellitus. Despite this diagnosis, Gonzales remained with the force for the next ten years, successfully performing all of the duties of his job. During the winter of 1995 and the fall of 1996, however, Gonzales failed his routine firearms requalification test[1] and allegedly failed his driving requalification test as well.[2] Pursuant to the department's written operating procedures, Police Chief Ray Douglas initiated a disability investigation, a part of which required Gonzales to undergo a physical examination. Based on an individualized assessment of Gonzales's condition, Bill Davis, M.D. determined that Gonzales suffered from severe diabetic neuropathy. This condition, concluded Dr. Davis, caused Gonzales to experience dexterity problems in his hands and numbness in his feet, limiting his ability to handle firearms safely and drive vehicles to police specifications. In March 1996, after receiving Dr. Davis's report, the department placed Gonzales on sick leave for six months, at the end of which time he was required by the department to take early medical retirement.

---

[1]The record indicates that Gonzales experienced difficulties reloading and clearing malfunctions with his firearm.

[2]Although it is unclear from the record whether Gonzales passed or failed the driving requalification, it appears, at the very least, that he had difficulty with certain components of the test, including (1) completion of the three-lane decision test, and (2) completion of the driving course in the minimum required time.

Gonzales filed a complaint with the EEOC and was issued a right-to-sue letter. Thereafter, Gonzales timely filed this action against the department in federal district court, alleging violations of the Americans with Disabilities Act ("ADA" or the "Act"). In response, the department filed a motion for summary judgment which, as noted above, the district court granted on the alternative grounds that Gonzales either (1) is not disabled or (2) is not qualified to perform the essential functions of a police officer, with or without an accommodation. Gonzales now appeals, seeking reversal.

## II.

## ANALYSIS

### A. Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court.[3] Summary judgment is appropriate when the evidence, viewed in the light most favorable to the nonmoving party, presents no genuine issue of material fact and shows that the moving party is entitled to judgment as a matter of law.[4]

### B. The ADA

The ADA makes it unlawful for an employer to discriminate

---

[3] Melton v. Teacher's Ins. & Annuity Ass'n of America, 114 F.3d 557, 559 (5th Cir.1997).

[4] River Prod. Co., Inc. v. Baker Hughes Prod. Tools, Inc., 98 F.3d 857, 859 (5th Cir.1996) (citing FED.R.CIV.P. 56(c)).

against an employee who is a "qualified individual with a disability" because of that individual's disability.[5]  To prevail on a claim under the Act, a plaintiff must prove that (1) he has a "disability," (2) he is "qualified" for the position in which he seeks employment, and (3) he was "discriminated" against solely because of his disability.[6]

### 1.    Insulin Dependent Diabetes as a Disability

A "disability" is "a physical or mental impairment that substantially limits one or more of the major life activities."[7] The ADA defines neither "substantially limits" nor "major life activities."  In the agency regulations promulgated to implement the Act, however, the EEOC sets forth the factors to be considered in determining whether an impairment is substantially limiting: (1) the nature and severity of the impairment, (2) its duration or expected duration, and (3) its actual or expected permanent or long-term impact.[8]  "Major life activities," as defined in these regulations, are "those basic activities that the average person in

---

[5]42 U.S.C. § 12112(a)(1997).

[6]Talk v. Delta Airlines, Inc., 165 F.3d 1021, 1024 (5th Cir. 1999).

[7]42 U.S.C. § 12102(2)(A)(1997).  Also included in the ADA's definition of "disability" are (1) having a record of a substantially limiting impairment and (2) being regarded as having such an impairment.  Id. at § 12102(2)(B)-(C).

[8]29 C.F.R. § 1630.2(j)(2)(1998).

4

the general population can perform with little or no difficulty,"[9] and include such functions as "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working."[10]

The department argues that Gonzales is not disabled because, when his diabetes is controlled with insulin, he is fully able to care for himself, as well as perform most of the other essential life functions specified in the regulations. The only function in which Gonzales is limited, argues the department, is the performance of particular manual tasks, including operating a motor vehicle to police specifications and safely handling a firearm. Unfortunately, the department notes, performance of these tasks is an indispensable part of being a police officer. The department argues that, because (1) a person's "inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working,"[11] and (2) Gonzales has offered no evidence of a general incapacity to work, he has failed to raise a genuine issue of material fact as to whether he is disabled.

The department's argument, as facially logical as it may appear, is suspect because it is premised on the assumption that Gonzales's diabetes should be considered in its mitigated — in

---

[9] 29 C.F.R. Pt. 1630 App. § 1630.2(i)(1998).

[10] 29 C.F.R. § 1630.2(i)(1998).

[11] Id. at § 1630.2(j)(3)(i).

this case, medicated — state.  In <u>Washington v. HCA Health Servs. of Texas, Inc.</u>,[12] however, we held that, in determining whether an individual is disabled, courts should consider a serious impairment, such as diabetes, in its unmitigated state.  An insulin-dependent diabetic who is deprived of insulin will lapse into a coma.[13]  Hence, applying the standard set forth in <u>Washington</u>, it is clear beyond peradventure that, in its unmitigated state, Gonzales's diabetes substantially limits one or more major life activities.

Despite our holding in <u>Washington</u>, however, the question whether courts should consider mitigating measures in making disability determinations is still up for debate.  Recently, the Supreme Court granted certiorari and heard oral argument in two cases that implicate precisely this issue.[14]  As the Supreme Court's rulings in these cases will not be known until later this term, and as we find other issues dispositive in the instant case, we elect to bypass the question whether Gonzales is disabled within the meaning of the Act, making resolution of the mitigated/unmitigated issue unnecessary.  Instead, we assume <u>arguendo</u> that Gonzales is disabled and turn to the question of his <u>qualification</u> for the job.

_____

[12]152 F.3d 464 (5th Cir. 1998).

[13]29 C.F.R. Pt. 1630 App. § 1630.2(j)(1998).

[14]<u>See</u> <u>Murphy v. United Parcel Serv.</u>, 141 F.3d 1185 (10th Cir. 1998), <u>cert granted</u>, 119 S.Ct. 790 (1999)(No. 97-1992); <u>Sutton v. United Air Lines, Inc.</u>, 130 F.3d 893 (10th Cir. 1997), <u>cert. granted</u>, 119 S.Ct. 790 (1999)(No. 97-1943).

6

## 2. Qualified Individual with a Disability

A "qualified individual with a disability" is a disabled person who "satisfies the requisite skill, experience, education and other job-related requirements of the employment position [he] holds or desires"[15] and who, "with or without reasonable accommodation, can perform the essential functions" of that job.[16] Given his deteriorating medical condition, Gonzales does not argue that without accommodation he is qualified to perform the essential functions of a police officer, such as driving and handling a weapon. Rather, he contends, there is a genuine issue of material fact as to whether the department could have accommodated his physical limitations by either (1) giving him the opportunity to retest on both his firearms and driving tests or (2) reassigning him to the position of evidence technician.[17]

Under the ADA, if an employee proves that his employer has failed to make reasonable accommodations to the employee's "known physical or mental limitations," the employer will be deemed to have "discriminated," unless it can show that accommodation would impose "undue hardship on the operation" of its business.[18]

---

[15]29 C.F.R. § 1630.2(m)(1998).

[16]42 U.S.C. § 12111(8)(1997); 29 C.F.R. § 1630.2(m)(1998).

[17]At some point prior to Gonzales's retirement, the position of evidence technician was retitled "Community Relations Officer." Because both parties and the district court refer to the position using its previous title, we too use the former title.

[18]42 U.S.C. § 12112(b)(5)(A)(1997).

**(a) Retesting**

Gonzales first argues that the department could have accommodated his physical limitations by allowing him to retake his firearms and driving exams. In support of this position, Gonzales relies on the deposition testimony of Police Chief Douglas to the effect that officers are routinely given more than one chance to meet their certification requirements. Gonzales claims that, even though he was told that he would be permitted to retest, he was, in fact, never afforded the opportunity to do so.

Based on a review of the record, we find Gonzales's assertions regarding the NBPD's retesting practices questionable at best. Although Chief Douglas did testify that examiners tend to "work with" the officer on the day of his testing in an effort to help him retain qualification, the Chief also indicated that it is not the department's general practice to allow officers to return on a subsequent day for retesting. Chief Douglas did testify, however, that it was his understanding that, in the instant case, Gonzales had in fact been permitted to return to the shooting range on a second occasion but that he had failed the firearms certification test on that day too.

Be that as it may, we conclude that, even if Gonzales is correct in asserting that the NBPD should have but did not allow him to retest, there is no genuine issue of material fact as to whether he is capable of performing all essential functions of a

8

police officer.  Pretermitting consideration of firearms proficiency, we observe that, under the current law in this circuit, a driver with insulin-dependent diabetes poses a direct threat to the health and safety of others as a matter of law.[19]  As it is undisputed that driving is an essential function of every NBPD police officer, Gonzales is not qualified for the position in the absence of an accommodation that will eliminate the inherent safety risk that his driving poses.  And, as Gonzales cannot show that retesting would make him a safer driver, given his neuropathy, such an accommodation, i.e., retesting, cannot be considered reasonable under the Act.

We recognize that, in light of changes to the federal regulations on which our per se rule was based, as well as possible advancements in medical technology, the blanket exclusion of insulin-dependent diabetics from positions that require driving may no longer be viable.[20]  Nevertheless, it is undisputed that, in the instant case, Dr. Davis performed an individualized assessment of Gonzales's medical condition and, based on that assessment, concluded that his diabetic neuropathy prevents Gonzales from being able to handle a firearm safely or to drive a vehicle to police specifications.  Hence, we conclude that, even in the absence of

---

[19]See Chandler v. City of Dallas, 2 F.3d 1385, 1395 (5th Cir. 1993); Daugherty v. City of El Paso, 56 F.3d 695, 698 (5th Cir. 1995).

[20]See Kapche v. City of San Antonio, No. 98-50345 (on remand for consideration of this issue).

the per se rule, there is no genuine issue of material fact as to whether Gonzales is qualified for the job of police officer, with or without the retesting accommodation.

**(b) Reassignment**

Gonzales further contends, however, that the department could have accommodated his limitations by reassigning him to the position of evidence technician.[21]  Under the ADA, reassignment to a vacant position can be a reasonable accommodation,[22] and the department has conceded that an evidence technician job was available when Gonzales retired.  Before liability will be imposed on the department for failing to accommodate Gonzales through reassignment, however, Gonzales must first satisfy his burden of proving that he is qualified, with or without reasonable accommodation, for the evidence technician job.[23]  The department argues that Gonzales has failed to adduce evidence sufficient to

---

[21]Initially, Gonzales also argued that the department could have reassigned him to the position of police dispatcher.  At oral argument on appeal, however, counsel for Gonzales abandoned this claim, admitting that there were no dispatcher positions available at the time Gonzales retired.  See 42 U.S.C. § 12111(9)(B)(1997)(defining "reasonable accommodation" as, inter alia, reassignment to a vacant position).

[22]Id. at § 12111(9)(B).

[23]See 29 C.F.R. Pt. 1630 App. § 1630.2(o)(1998); Dalton v. Subaru-Isuzu Automotive, Inc., 141 F.3d 667, 678(7th Cir. 1998)(noting that, to be considered "qualified" for the potential new position, an individual must again (1) satisfy the legitimate prerequisites for that alternative position, and (2) be able to perform the essential functions of that position with or without reasonable accommodation).

10

raise a genuine issue of material fact as to whether he can meet this burden.  We agree.

Evidence technician is a "certified position," meaning inter alia that an applicant must be a commissioned officer.[24]  To be a commissioned officer, though, one must be both firearms and driving certified.  As previously noted, the record shows that Gonzales failed his firearms requalification test and, at the very least, experienced difficulties with his driving exam.  Furthermore, Dr. Davis's medical evaluation indicates that, even had Gonzales been allowed to retest in these areas, his severe diabetic neuropathy would continue to limit his ability to handle a firearm safely and drive a vehicle to police specifications.  Thus, as Gonzales is not qualified to be a commissioned officer, he is likewise not eligible — qualified — for the position of evidence technician. Consequently, the department cannot be held liable for failing to accommodate Gonzales through reassignment to this position.

The only way in which Gonzales might possibly have escaped this outcome would have been to challenge the legitimacy of the NBPD's commissioned officer qualification standard for evidence technician.  Under the ADA, if a plaintiff can prove that his employer has imposed eligibility requirements that tend to screen out the disabled, that employer will be deemed to have

_____

[24]At oral argument on appeal, counsel for Gonzales contended that the position of evidence technician was, at some point, decertified, thereby removing the commissioned officer requirement. We find nothing in the record to support this contention.

11

"discriminated" unless it can demonstrate that the particular eligibility standard or criterion in question is "job-related" and "consistent with business necessity."[25]

In the instant case, the department's requirement that all evidence technicians be commissioned officers is a facially neutral standard. More importantly, nowhere in any of the pretrial, summary judgment, or appellate pleadings or proceedings has Gonzales contended that this particular requirement had an adverse impact him.[26] Thus, as Gonzales failed even to plead a disparate impact claim, the burden never shifted to the department to prove that its qualification requirements for the position of evidence technician are job related and consistent with business necessity. In essence, Gonzales waived this contention by not advocating it.

---

[25]29 C.F.R. § 12112(b)(6)(1998).

[26]Recognized as an actionable form of discrimination under Title VII, the disparate impact theory has been adopted entirely by the ADA. See 42 U.S.C. S 12112(b)(3)&(6)(1997); 1 H.H. Perritt, Jr., Americans With Disabilities Act Handbook § 4.52 (3d ed. 1997); 29 C.F.R. § 1630.15(b)&(c)(1998)(discussing disparate impact defenses).
To make out a Title VII prima facie claim of disparate impact discrimination, a plaintiff must (1) identify the challenged employment practice or policy, and pinpoint the defendant's use of it; (2) demonstrate a disparate impact on a group that falls within the protective ambit of Title VII; and (3) demonstrate a causal relationship between the identified practice and the disparate impact. See 42 U.S.C. § 2000e-2(k)(1)(A)(i); EEOC v. Steamship Clerks Union, Local 1066, 48 F.3d 594, 601 (1st Cir. 1995)(citing Wards Cove Packing Co. v. Atonio, 490 U.S. 642, 650-57 (1989)). In the ADA context, a plaintiff may satisfy the second prong of his prima facie case by demonstrating an adverse impact on himself rather than on an entire group. 1 Barbara Lindemann & Paul Grossman, Employment Discrimination Law 333-34 (3d ed. 1996).

## III.

## CONCLUSION

Based on our <u>de novo</u> review, we conclude that there is no genuine issue of material fact as to whether the department failed to meet its reasonable accommodation obligation under the ADA. The only accommodations sought by Gonzales were retesting and reassignment to the position of evidence technician. For the foregoing reasons, neither of these alternatives are viable. Consequently, even if, as we have assumed without granting, Gonzales is "disabled" for purposes of the ADA, he is not qualified, with or without accommodation, for the position of police officer. The district court's summary judgment in favor of the City is, therefore

AFFIRMED.