Jose A. SOLEDAD

v.

**UNITED STATES DEPARTMENT OF TREASURY, Robert E. Rubin, Secretary of the Department of Treasury.**

No. EP–99–CA–146–DB.

United States District Court,
W.D. Texas,
El Paso Division.

Oct. 10, 2000.

Antonio V. Silva, Law Offices of Antonio V. Silva, El Paso, TX, for plaintiff.

Eduardo R. Castillo, Assistant United States Attorney, El Paso, TX, for defendant.

## MEMORANDUM OPINION AND ORDER

BRIONES, District Judge.

On this day, the Court considered Defendant's "Motion for Judgment as a Matter of Law, Alternatively Motion for New Trial and Motion for Remittitur," filed in the above-captioned cause on May 26, 2000. On June 20, 2000, Plaintiff filed a Response to Defendant's Motion.

After due consideration, for the reasons set forth below, the Court is of the opinion that Defendant's Motion for Judgment as a Matter of Law and alternative Motion for New Trial should be granted in part.[1]

## BACKGROUND

Plaintiff filed this cause on May 6, 1999, alleging that Defendant violated Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e–2000e–17 ("Title VII"), and the Rehabilitation Act of 1973, 29 U.S.C. §§ 701–797b ("Rehabilitation Act"). Plaintiff alleges that Defendant discriminated against him on the basis of national origin and disability and that Defendant retaliated against him for having engaged in a protected activity. By Memorandum Opinion and Order entered March 6, 2000, the Court entered summary judgment in Defendant's behalf as to Plaintiff's claims under Title VII, namely, national origin discrimination and retaliation.[2]

On February 28, 2000, the Court empaneled a jury for trial of Plaintiff's remaining claims and Plaintiff presented his entire case.

At the close of Plaintiff's evidence, Defendant made an oral Motion for Judgment as a Matter of Law pursuant to Federal Rule of Civil Procedure 50(a). Orally, the Court denied Defendant's Motion.

Defendant presented evidence and rested on February 29, 2000. At that point, Defendant orally renewed its Motion for Judgment as a Matter of Law, which the Court orally denied. Defendant further offered the following objection with respect to the Court's Instructions to the Jury:

---

1. As discussed below, the Court need not consider Defendant's alternative Motion for Remittitur and related arguments.

2. Although the Court entered its Memorandum Opinion and Order after trial in this matter, the Court informed the Parties prior to trial of its ruling on Defendant's Motion for Summary Judgment. Accordingly, the Parties did not enter at trial any evidence related to Plaintiff's Title VII claims.

MR. CASTILLO: ... On page 4 of the Charge, the term originally in the charge was under the paragraph "Nature of Claims," the sentence reads, "The Rehabilitation Act of 1973 prohibits an employer, from excluding, denying benefits to or otherwise subjecting to discrimination, a qualified individual with [a] disability solely because of that person's disability."

Pursuant to the [charge] conference, it was proposed that that term be removed. I would urge the Court that that term be left in there. That is the term that is used in the Rehabilitation Act statute, and the one that specifically is referred to and used.

.... I would agree that generally the [Americans with Disabilities Act] standards are applicable to the Rehabilitation Act, when they are similar. However, in this case, the standards are not similar, and the statute provides for a specific language as to the causation, and that causation would be "solely." And therefore, we would urge the Court that that term be left in the Charge. And also that underneath that, where it says, 'Disability Discrimination,' the different factors, third one, where it says "Jose Soledad's disability was a motivating factor in Defendant's treatment of Plaintiff," we would argue to the Court that that should be changed to "Jose Soledad's disability was the sole factor in Defendant's treatment of the Plaintiff."

In summary, the evidence presented at trial through evidence and testimony revealed the following:

a. Plaintiff has worked for the United States Customs Service ("Customs") since 1985, most recently as a supervisor assigned to the Ysleta Port of Entry ("POE"). Plaintiff received marks of "outstanding" and "excellent" on 1994 and 1995 performance reviews, respectively. He received a "Special Act Award" in September 1995 and October 1996. Other supervisors believe Plaintiff is a good supervisor.

b. Frank Fuentes ("Fuentes") became Chief of cargo operations ("Cargo") at the Ysleta POE, as well as Plaintiff's direct superior, in October 1996. According to Plaintiff, who testified at trial, Fuentes treated Plaintiff "very, very negative" during the entire time Fuentes was Chief of Cargo. According to other Cargo supervisors, namely Richard Walker ("Walker") and Ernesto Aguilar ("Aguilar"), who testified at trial, Fuentes treated Plaintiff "cold[ly]" and the two had trouble "working as a team."

c. As Chief of Cargo, Fuentes's duties and authority included supervising all operations, managing overtime budgets and establishing and enforcing policies applicable to all of his subordinates. When Fuentes became Chief in October 1996, in an effort to manage his overtime budget, he instituted an unwritten policy that only one supervisor per shift be scheduled at Cargo on holidays, days on which employees receive a higher, overtime wage. Plaintiff and Walker, who did the scheduling for Cargo, did not know about the policy. In February 1998, Fuentes realized that the policy was not being followed and issued a written memorandum reminding Cargo personnel of that policy. In general, when determining which supervisor will work on a particular holiday, the person with the lowest income in a pool of supervisors who are eligible to work overtime and/or holidays is required to work. Prior to February 1997, Fuentes told Plaintiff that he did not want Plaintiff to do administrative work on holidays. For some time, Plaintiff was assigned the sole task of a special administrative reporting function known as the "B–35 report." After February 1997, Fuentes did not allow Plaintiff to work on holidays.

d. In February 1997, Plaintiff's psychiatrist, Dr. Gary Feldman ("Dr.Feldman"), placed certain restrictions upon Plaintiff's work to alleviate symptoms from longstanding depression and stress-related problems, which Dr. Feldman diagnosed as "Posttraumatic Stress Disorder," among

other things. Later, in October 1997, Dr. Ben Hill Passmore ("Dr.Passmore"), a medical doctor specializing in psychiatry, diagnosed Plaintiff as having "Major Depression with features of Post Traumatic Stress Disorder," leading to constant headaches, throbbing in his legs and inability to sleep, and resulting in constant fatigue and nervousness. Through a February 17, 1997, hand-written letter to Ysleta POE Director Carol Rackley ("Rackley"), Dr. Feldman opined that Plaintiff could perform the essential functions of his supervisor position if he were only required to work a day-shift, Monday through Friday and were not required to work overtime. Plaintiff gave that letter to Fuentes, who then stated, "Almost anybody can obtain this type of accommodation" and "some people get what they want." Customs complied with the limitations and Plaintiff worked a day-shift, Monday through Friday with no overtime. Prior to receiving that letter, Fuentes did not know Plaintiff had any disability or need for special accommodation in the workplace.

e. At some point, Plaintiff filed a claim for workers' compensation through the Department of Labor related to his health problems. From time to time, Plaintiff submitted medical certification for his work-related injury claim and continued need for accommodation. In May 1997, Rackley sent Plaintiff a letter stating that Plaintiff had not submitted proper medical documentation regarding his claimed work-related injury and asking Plaintiff to augment that documentation. That letter explained that Customs needed to know when Plaintiff might be able to return to full capacity so that they could plan for future personnel needs. Furthermore, that letter expressed Customs' concern for Plaintiff's well-being. Plaintiff was "shocked" when he received the letter because he believed he and his doctor had provided all the necessary information and he could not believe that Customs wanted more.

f. After February 1997, Fuentes became even more "cold" toward Plaintiff and did not interact with or talk to Plain-

tiff. Plaintiff felt "belittled" by Fuentes's coldness. He also believed that Fuentes did not like the fact that Plaintiff could not work overtime and thought Plaintiff had concocted his need for the accommodation. Fuentes commented on several occasions to other employees that "I guess we'll have to work the overtime because others cannot." Walker testified that he noticed that Fuentes seemed to treat Plaintiff "differently" about five months after Fuentes took over as Chief of Cargo.

g. In September 1997, Dr. Feldman released Plaintiff for full duty without restriction.

h. On December 11, 1997, Fuentes became angry about his subordinate supervisors' vacation planning during the upcoming holidays—Aguilar in particular. He went to Aguilar's office, slammed the door and yelled at Aguilar about taking two weeks' vacation. Then Fuentes called a meeting of all supervisors at the Ysleta Cargo facility on duty at that time. Walker, Aguilar and Plaintiff were the only supervisors on duty at the time. Fuentes was angry and yelled at them. Fuentes stated that he felt he was losing control of the facility and wanted to be more involved with the scheduling process. When Plaintiff volunteered to cover for Aguilar, Fuentes said to Plaintiff in an angry and very authoritarian manner that he (Plaintiff) is unreliable and/or undependable because Plaintiff was absent from work too often. Fuentes may have stated that Plaintiff is unreliable and/or undependable several times.

i. From June 19, 1997 through December 11, 1997—approximately six months—Plaintiff submitted fifty "SF 71 Application for Leave" forms ("SF 71"). During that time, Plaintiff sought leave for "continuation of pay," "annual leave" and "sick leave." Plaintiff submitted eight continuation of pay applications—related to Plaintiff's workers' compensation claim; sixteen applications for sick leave—for doctors' appointments and illnesses; and twenty-six applications for annual leave—personal

leave unrelated to any sickness. Plaintiff did not use annual leave for doctors' appointments; rather, he used his annual leave, a total of 190 hours during that period, for personal reasons only. Of the fifty SF 71s Plaintiff submitted during that period, forty were submitted on the same day of or after the date on which he took leave. Plaintiff and Fuentes agreed that Plaintiff would tell Fuentes about his doctors' appointments ahead of time but only submit an SF 71 later, depending upon how many hours Plaintiff actually took for sick leave. Sometimes, Plaintiff called work on the day of a shift and stated that he would not come to work that day. .

j. On December 15, 1997, Plaintiff submitted a number of SF 71 forms to Fuentes for various days in December 1997. Fuentes approved all SF 71's Plaintiff submitted, totaling forty-one hours. Plaintiff, who had four leave hours remaining for 1997, which Plaintiff had to "use or lose," asked Fuentes to allow him to take those four hours on December 31, New Years' Eve. Fuentes said no because it would be too difficult to find someone to cover for Plaintiff. Fuentes told Plaintiff he could take those four hours at any time prior to the end of that particular pay period. Plaintiff felt frustrated and disappointed that Fuentes did not allow him to take those hours on New Years' Eve. He also felt that Fuentes' decision did not make any sense because there would be hardly any traffic; certain large manufacturing plants nearby in Mexico would be closed that day; the Cargo area could get along with minimum staffing; and it was very unusual (in his experience) for leave requested on December 31st to be denied.

Plaintiff later sought and received approval from another supervisor, one "Supervisor Ramos," to take those four "use or lose" hours and actually did take them.

The Court thereafter instructed the jury[3] and the jury retired to deliberate. After brief deliberation, the jury returned a verdict in Plaintiff's favor for compensatory damages in the amount of $125,000, divided as follows: $50,000 for Plaintiff's disability discrimination claim and $75,000 for Plaintiff's disability hostile environment claim. The Court entered Judgment in Plaintiff's favor on the jury's verdict on May 11, 2000.

The instant motions followed.

## STANDARDS

### A. Standard on Motion for Judgment as a Matter of Law

In general, a court can grant judgment as a matter of law where "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party" on a particular issue. FED.R.CIV.P. 50(a). Defendant having made a motion for judgment as a matter of law "at the close of all the evidence, the court is considered to have submitted the action to the jury subject to the court's later deciding the legal questions raised by the motion." *Id.* 50(b). After a jury verdict, "[t]he movant may renew its request for judgment as a matter of law by filing a motion not later than 10 days after entry of judgment." *Id.*

The Fifth Circuit provided the applicable standard of decision long ago in *Boeing Co. v. Shipman,* 411 F.2d 365 (5th

---

**3.** With respect to those portions of the Jury Instructions to which Defendant objected, the Court instructed the jury as follows:

**Nature of the claims**

The plaintiff claims that the defendant discriminated against him based on his disability.... The Rehabilitation Act of 1973 prohibits an employer, from excluding, denying benefits to or otherwise subjecting to discrimination, a qualified individual with a disability *because of* that person's disability.

**Disability discrimination**

For the plaintiff, Jose A. Soledad, to establish a claim of intentional discrimination by the United States Customs Service, the law requires that Plaintiff prove by a preponderance of the evidence that:

....

**Third:** his disability *was a motivating factor* in defendant's treatment of the plaintiff[; and]

....

(Underscoring Added).

Cir.1969), *overruled in part on other grounds by Gautreaux v. Scurlock Marine, Inc.*, 107 F.3d 331 (5th Cir.1997). Under *Boeing*, a court "should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion." *Id.* at 375. Though a court might decide the outcome differently, "it is the function of the jury as the traditional finder of the facts, and not the Court, to weigh conflicting evidence and inferences, and determine the credibility of witnesses." *Id.* "A mere scintilla of evidence is insufficient to present a question for the jury." *Id.* Rather, "[t]here must be a conflict in substantial evidence to create a jury question." *Id.* Substantial evidence is defined as "evidence of such quality and weight that reasonable and fair minded men in the exercise of impartial judgment might reach different conclusions." *Id.* at 374. Thus, the motion should be granted only "[i]f the facts and inferences point so strongly in favor of one party that the [c]ourt believes that reasonable men could not arrive at a contrary verdict." *Id.*

### B. Standard on Motion for New Trial

Rule 59 provides that a court may grant a new trial "to all or any of the parties and on all or part of the issues ... for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." FED.R.CIV.P. 59(a). To grant a new trial on evidentiary basis, a court must be convinced that "the evidence points so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary conclusion." *Brady v. Fort Bend County*, 145 F.3d 691, 713 (5th Cir.1998) (internal quotation marks and brackets removed) (quoting *Pagan v. Shoney's, Inc.*, 931 F.2d 334, 337 (5th Cir.1991)). A new trial is justified only if the verdict is against the great—not merely the greater—weight of the evidence. *See Pagan*, 931 F.2d at 336–37. A verdict can be against the great weight of the evidence, and thus justify a new trial,

even though there is evidence to support the verdict. *See Shows v. Jamison Bedding, Inc.*, 671 F.2d 927, 930 (5th Cir.1982). The great weight of the evidence is a higher standard than a preponderance of the evidence, *see Pagan*, 931 F.2d at 336, and is "not easily met." *Scott v. Monsanto Co.*, 868 F.2d 786, 789 (5th Cir.1989). Moreover, a court may not set aside a jury's verdict "merely because the jury could have drawn different inferences or conclusions or because judges feel that other results are more reasonable." *TCP Indus., Inc. v. Uniroyal, Inc.*, 661 F.2d 542, 546 (6th Cir.1981).

A court may also grant a new trial where *substantial injustice is done*, including where prejudicial errors are made in jury instructions. *See Aero Int'l, Inc. v. United States Fire Ins. Co.*, 713 F.2d 1106, 1113 (5th Cir.1983).

### DISCUSSION

At trial, Plaintiff presented two different theories of recovery under the Rehabilitation Act: (1) disability discrimination and (2) a hostile work environment based on his disability. The jury found for Plaintiff on both claims. Defendant first argues that there is no evidence to support either of those claims. Defendant also contends that the Court erred in instructing the jury as to the elements of Plaintiff's disability discrimination claim by failing to instruct the jury that Plaintiff could not recover under the Rehabilitation Act unless Defendant's conduct was *solely* based on Plaintiff's disability, and, consequently, Defendant is entitled to a new trial Finally, Defendant contends that the damages the jury found are excessive and subject to remittitur.

Plaintiff, naturally, contests Defendant's claims herein and asks the Court to uphold the jury's findings by denying the instant motions in their entirety.

### A. Disability Discrimination

Before determining whether Plaintiff presented sufficient evidence to create a

jury question under *Boeing,* the Court must consider whether the question the jury in this case considered was the correct question. In other words, the Court first considers Defendant's contention that the Court should have instructed the jury that Plaintiff would have to prove by a preponderance of the evidence that Plaintiff's disability was *the sole factor* in defendant's treatment of the plaintiff.

In pertinent part, the Rehabilitation Act provides as follows: "No otherwise qualified individual with a disability ... shall, *solely by reason of* her or his disability, be ... subjected to discrimination ... under any program or activity conducted by any Executive agency...." 29 U.S.C.A. § 794(a) (West Supp.2000) (emphasis added). The Rehabilitation Act generally proscribes disability-based decision-making in employment as well as other areas. *See Chandler v. City of Dallas,* 2 F.3d 1385, 1389–91 (5th Cir.1993).

Although the unambiguous, plain language of the statute should be enough, Plaintiff correctly points out that the Fifth Circuit has not expressly held that the the "solely by reason of" language defines the proper liability standard under the Rehabilitation Act, most likely because the statute is plain on its face. However, the Fifth Circuit has addressed the "solely" standard in passing. In *Leckelt v. Board of Commissioners of Hospital District No. 1,* 909 F.2d 820, 825–26 (5th Cir.1990), the court upheld the district court's finding after a bench trial that the plaintiff was not terminated " *'solely* by reason of' his handicap (or perceived handicap)." (Quoting 29 U.S.C. § 794). There, the court applied the "solely" language without analysis. Similarly, comparing the Rehabilita-

tion Act to a Louisiana disability discrimination statute, the Fifth Circuit in *Kelly v. Boeing Petroleum Services, Inc.,* 61 F.3d 350, 364 (5th Cir.1995), noted that "the federal statute proscribes discrimination 'by reason of her or his disability' only when disability is the *sole* motivating factor." Still, neither case is definitive.[4]

Defendant points to other circuit decisions which are relevant here. Namely, in *Baird v. Rose,* 192 F.3d 462 (4th Cir.1999), the Fourth Circuit held that the ADA should not be read to require that discrimination be the sole basis for the adverse employment action, noting that "[d]espite the overall similarity of [the ADA and the Rehabilitation Act] the language of these two statutory provisions regarding the causative link between discrimination and adverse action is significantly dissimilar." *Baird,* 192 F.3d at 469. *Baird,* in turn, followed the Eleventh Circuit in *McNely v. Ocala Star–Banner Corp.,* 99 F.3d 1068 (11th Cir.1996). There, the Eleventh Circuit reversed a defense jury verdict which required the jury to find under the ADA that the plaintiff's disability was the *sole* reason for the challenged conduct. *See id.* at 1073. In so doing, the *McNely* court exhaustively compared the ADA's relevant causation language ("because of disability") with the Rehabilitation Act's causation language ("solely because of"). *See id.* at 1073–74. *McNely* found that neither the plain language of those acts, the legislative history nor common sense supported holding that ADA plaintiff to the more difficult Rehabilitation Act standard. *See id.* at 1078.

Although *Baird* and *McNely* decided what liability standard to use in an ADA case and, in that sense, are not on

**4.** Defendant contends that the Fifth Circuit has held in *Gonzales v. City of New Braunfels,* 176 F.3d 834, 836 (5th Cir.1999), that the proper liability standard under the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12111 *et seq.* ("ADA"), requires showing that the plaintiff "was 'discriminated' against *solely because of* his disability." (Emphasis added). However, *Talk v. Delta Airlines, Inc.,* 165 F.3d 1021, 1024 (5th Cir.1999), which *Gonzales* cites for that proposition, in turn,

does not require a "solely" standard. Moreover, *Gonzales* was limited to determining whether the plaintiff was a qualified individual with a disability and, if so, whether the defendant failed to meet its obligation under the ADA to provide reasonable accommodations to the plaintiff. *See Gonzales,* 176 F.3d at 840. Accordingly, the Court finds that the Fifth Circuit has not reached the "solely" language issue through *Gonzales.*

point, the Court finds their analyses abundantly adaptable. Each court found (1) that the Rehabilitation Act and ADA bear different causation language; (2) that the difference appears plainly on each statute's face; (3) that the Rehabilitation Act's "solely by reason of" language is inarguably stronger than the ADA's "by reason of" language; (4) that Congress must have wanted it that way;[5] and (5) that simply because the two statutes are generally to be construed consistently does not thereby require every detail to be construed the same way. With such a framework, it does not take a monumental leap of logic to apply *McNely* and *Baird*, which the Court finds well-reasoned. Thus, the Court finds that the Rehabilitation Act demands that Plaintiff prove his disability was the *sole cause* of the discrimination he allegedly suffered.

 Unfortunately, here, the Court employed an ADA standard of liability in instructing the jury. The Court essentially told the jury that Plaintiff's employer could not consider Plaintiff's disability in any fashion when making any employment decision relevant to Plaintiff, even though the terms "by reason of" and "solely by reason of" are not nearly synonymous. *Cf. Price Waterhouse v. Hopkins*, 490 U.S. 228, 241, 109 S.Ct. 1775, 1785, 104 L.Ed.2d 268 (1989) (plurality opinion) (setting forth the proposition with unanimous agreement that "because of," as used in Title VII does not mean "solely because of"). Plaintiff does not contest that the "solely" standard is the correct standard. Instead Plaintiff submits, without authority, that any such

error was harmless. The Court strenuously disagrees. With respect to jury instructions, harmless errors are those which "could not have affected the outcome of the case," *Bender v. Brumley*, 1 F.3d 271, 276–77 (5th Cir.1993), which hardly is the case here. Had the jury been given the stronger "solely" language and still returned a verdict in favor of Plaintiff, then such an error would be harmless. However, clearly, the jury's consideration of an incorrect liability standard effectively lowering Plaintiff's burden under the facts of this case is prejudicial error.

To remedy the error, the Court could order a new trial pursuant to Rule 59. *See Aero Int'l*, 713 F.2d 1106. However, after thoroughly scouring the trial record in this cause as well as all exhibits entered during trial, the Court is of the opinion that Plaintiff would not be able to meet the Rehabilitation Act's "solely by reason of" liability standard language upon retrial. Hence, there is no reason to hold another trial in this matter. Indeed, Plaintiff was fully heard at trial. *See* FED.R.CIV.P. 50(a) (requiring that "a party has been fully heard on an issue"). He had an opportunity to present all of the evidence available to him which he believed would convince a jury that Defendant discriminated against him by reason of his disability. *See id.* Presumably, he did.

In pertinent part, to prove his case under the Rehabilitation Act, Plaintiff must have proved that he was an individual with a disability and he was subjected to discrimination *solely because of* his disability.[6]

---

5. Generally, a court may not examine the legislative record for interpretive support unless the plain language enacted is ambiguous. *See Johnson v. Sawyer*, 120 F.3d 1307, 1319 (5th Cir.1997) (" When we find the terms of a statute unambiguous, judicial inquiry is complete except in rare and exceptional circumstances ... such as where the application of the statute as written will produce a result 'demonstrably at odds with the intentions of its drafters.' ") (quoting *Demarest v. Manspeaker*, 498 U.S. 184, 190, 111 S.Ct. 599, 603, 112 L.Ed.2d 608 (1991)). Notwithstanding, the *McNely* court examined the legislative history to conclude, albeit in *dictum*, that

"Congress knew exactly what it was doing then, by omitting the word 'solely,' it provided a different liability standard under Title II of the ADA than it provided under the Rehabilitation Act." *McNely*, 99 F.3d at 1075.

6. Furthermore, Plaintiff must be a "qualified individual with a disability." *See* 29 U.S.C.A. § 794(a). Although Defendant does not address this element, the Court notes that there likely is sufficient evidence to uphold the jury's verdict as to that element, in that Fuentes likely "regarded" Plaintiff as having a disability. *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir.1997) ("An individual

See 29 U.S.C.A. § 794(a); see also Chandler v. City of Dallas, 2 F.3d 1385, 1390 (5th Cir.1993). Essentially, Plaintiff offered the following evidence at trial, viewed in a light most favorable to Plaintiff: that he was a good employee who was not allowed to take four hours of sick leave on New Years' Eve; that it may have been because his supervisor, Fuentes believed Plaintiff was not reliable and not dependable; and that Fuentes felt this way because Plaintiff took too much time off work for doctors' appointments due to his disability. Fuentes also did not like the fact that Plaintiff needed an accommodation previously and treated Plaintiff coldly and sometimes "very, very negative[ly]."

Even assuming that the denial of four hours sick leave constitutes discrimination under the Rehabilitation Act,[7] however, the Court must "consider all of the evidence—not just that evidence which supports the non-mover's case." Boeing, 411 F.2d at 375. In that vein, Defendant offered documentary evidence that showed that Plaintiff took significant time off work for reasons not related to his disability, some twenty-six leave applications for a total of 190 hours "annual leave" during a six month period ending in December 1997—nearly thirty-two hours per month on average. Plaintiff testified that he never used "annual leave" for doctors visits, etc. Defendant also provided evidence that Plaintiff sometimes called into work and stated that he would not be going in that day. On a normal day, as Fuentes testified, that would not be a significant problem; but on New Years' Eve, finding a replacement for Plaintiff would be difficult in the event that Plaintiff could not come in to work, for reasons related to his disability or otherwise.

In short, the fact that Fuentes stated that he could not rely upon Plaintiff in general does not have any obvious or direct correlation to Fuentes's decision as a manager that Plaintiff could not take leave on the particular day he requested. Plaintiff's and Walker's opinion that there was no reason to deny such a request is inapposite. To the extent that there was any connection between Fuentes's feelings about Plaintiff's condition, need for an accommodation or need to take time off to attend doctors' appointments, that connection is so tenuous that it could not possibly constitute the sole reason for Fuentes' conduct. Indeed, the only rational inference from the evidence is that Fuentes granted nearly all of Plaintiff's leave requests—for sick leave, annual leave or otherwise—for most of 1997, during which Plaintiff needed and received an accommodation due to his disability. In fact, the same day Fuentes denied Plaintiff's New Years' Eve leave request, Fuentes approved some forty-one hours of leave requests Plaintiff submitted. Even if Fuentes did so in a "cold" manner, there simply is no connection between Fuentes's opinion of Plaintiff as unreliable and/or undependable and the managerial decision not to allow Plaintiff to take those four hours of leave. If Fuentes truly believed Plaintiff to be unreliable, it stands to reason that he would not want Plaintiff to serve on New Years' Eve; Fuentes would be more apt to let Plaintiff take those hours. Accordingly, the Court finds that, as a whole, the facts and inferences indicate so strongly that Plaintiff's disability was not the sole reason for the challenged decision that reasonable persons could not arrive at a verdict for Plaintiff. Consequently, the Court is of the

---

is 'regarded' as having an impairment if he ... has a physical or mental impairment that does not substantially limit a major life activity, but that is treated by a recipient as constituting such a limitation."); see also Sutton v. United Airlines, Inc., 527 U.S. 471, 489, 119 S.Ct. 2139, 2150, 144 L.Ed.2d 450 (1999) (noting that employer "must believe either that one has a substantially limiting impairment that one does not have or that one has a

substantially limiting impairment when, in fact, the impairment is not so limiting").

7. Without belaboring the point, the Court notes that losing some four hours of sick leave may not even constitute an adverse employment action. Moreover, apparently Plaintiff later took that leave after having another supervisor, Ramos, approve it. In other words, Plaintiff lost nothing.

opinion that Defendant is entitled to judgment as a matter of law pursuant to Rule 50.

■ Notwithstanding that the Court grants Defendant's Renewed Motion for Judgment as a Matter of Law, the Court is of the opinion that Defendant's Motion for New Trial should also be granted, conditionally. *See* FED.R.CIV.P. 50(c)(1) ("If the renewed motion for judgment as a matter of law is granted, the court shall also rule on the motion for a new trial, if any, by determining whether it should be granted if the judgment is thereafter vacated or reversed....").

First, the Court finds that the Court's error in instructing the jury as to the proper liability standard under the Rehabilitation Act renders the jury's verdict presumptively unjust. *See Aero Int'l.,* 713 F.2d at 1113. Thus, a new trial using the "solely by reason of" liability standard discussed above is warranted as to Plaintiff's disability discrimination claim. Secondly, for the same reasons discussed above, respecting Defendant's Rule 50 motion, the evidence in this cause plainly points to a verdict for Defendant. More precisely, thus, the Court is of the opinion that the jury's verdict is contrary to the great weight of the evidence and, hence, Defendant is entitled to a new trial. *See Brady,* 145 F.3d at 713. Accordingly, the Court is of the opinion that Defendant's Motion for New Trial should be granted in the event that the Court's ruling on Defendant's Renewed Motion for Judgment as a Matter of Law is reversed on appeal.

### B. Hostile Environment

■ Defendant next attacks Plaintiff's claim that he was subjected to a hostile work environment based on his disability. As the Court noted in its Memorandum Opinion and Order denying Defendant's Motion for Summary Judgment, the Fifth Circuit expressly declined to adopt this type of claim in *McConathy v. Dr. Pepper/Seven Up Corp.,* 131 F.3d 558, 563 (5th Cir.1998). Instead, the Fifth Circuit in *McConathy* outlined a hypothetical disability hostile environment claim in keeping with established hostile environment claims. *See id.* Thus, in order to establish a prima facie case for a hostile work environment claim, Plaintiff must show the following: (1) that he belongs to a protected group; (2) that he was subjected to unwelcome harassment; (3) that the harassment complained of was based upon his protected status; (4) that the harassment complained of affected a term, condition, or privilege of employment; and (5) that the employer knew or should have known of the harassment and failed to take prompt remedial action. *See id.; see also Farpella–Crosby v. Horizon Health Care,* 97 F.3d 803, 806 (5th Cir.1996). Moreover, the *McConathy* court added that "[i]n order to be actionable on a hostile environment theory, disability-based harassment, like sexual harassment, would presumably have to 'be sufficiently pervasive or severe to alter the conditions of employment and create an abusive working environment.'" *Id.* (quoting *Farpella–Crosby,* 97 F.3d at 806).

■ Here, the Court need only examine whether the evidence Plaintiff provided at trial was sufficiently severe and pervasive to constitute a hostile work environment. In that vein, the facts in *McConathy* are remarkably similar to the evidence Plaintiff provided here. There, the plaintiff alleged that her supervisor was not very supportive of her disability; became angry when the plaintiff needed surgery and "told her that she 'better get well this time,' and that he would 'no longer tolerate her health problems"; told staff members to avoid communication with the plaintiff; excluded the plaintiff from certain business meetings; took assignments away from her; and ignored her. *McConathy,* 131 F.3d at 560. Accepting the plaintiff's alleged facts as true, *see* FED.R.CIV.P. 12(b)(6), the court in *McConathy* agreed with the district court that the plaintiff had no claim for a disability-based hostile work environment claim, noting that the supervisor's conduct, "while insensitive and

rude, would not be sufficient as a matter of law to state a claim of hostile environment harassment." *Id.* at 563–64.

Here, in a light most favorable to Plaintiff, the evidence showed that Fuentes became angry when Plaintiff told Fuentes that he needed an accommodation due to his disability. Fuentes told Plaintiff that "almost anyone can obtain this type of accommodation." Later, Fuentes told Plaintiff that he was "unreliable" and/or "undependable," allegedly referring to Plaintiff's disability and related accommodation and need to attend doctors' appointments. The whole while, Fuentes was "very negative toward Plaintiff" and acted "cold" toward him. Fuentes also intimated that others would have to work all of the overtime at the Cargo facility because Plaintiff could not (due to his need for accommodation). Furthermore, Plaintiff was not allowed to work on holidays and also was not allowed to take requested time off on New Years' Eve.

Even assuming all of these things were based on Plaintiff's disability—not an entirely rock-solid proposition—the Court finds that altogether, those events are not sufficiently severe and pervasive to constitute a hostile work environment. Although Plaintiff testified that he felt "belittled" by Fuentes's conduct toward him, "[i]t is a simple fact that in a workplace, some workers will not get along with one another, and this Court will not elevate a few harsh words or 'cold-shouldering' to the level of an actionable offense." *McConathy,* 131 F.3d at 564. Accordingly, the Court finds that, even if such a claim as a disability-based hostile work environment exists, Plaintiff did not present sufficient evidence to create a jury question as to that claim, and the facts and inferences point so strongly in favor of Defendant that Defendant's Renewed Motion for Judgment as a Matter of Law must be granted with respect to Plaintiff's disability-based hostile work environment claim, too.

Finally, for the same reasons articulated above with respect to Plaintiff's claim for disability discrimination, the Court finds that Defendant's alternative Motion for New Trial should be conditionally granted as to Plaintiff's claim for disability harassment because the jury's verdict simply goes against the great weight of the evidence.

Accordingly, **IT IS HEREBY ORDERED** that Defendant's Renewed Motion for Judgment as a Matter of Law is **GRANTED** as to all of Plaintiff's claims in this case.

**IT IS FURTHER ORDERED** that Defendant's alternative Motion for New Trial is **CONDITIONALLY GRANTED** as to all Plaintiff's claims in this case.

**IT IS FURTHER ORDERED** that Defendant's alternative Motion for Remittitur is **DENIED AS MOOT.**

**IT IS FINALLY ORDERED** that the Court's May 11, 2000, Final Judgment is **VACATED.**