United States Court of Appeals
Fifth Circuit

**F I L E D**

August 30, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 05-20794
Summary Calendar

_____

ZEALOUS JONES MAYBERRY, III,

Plaintiff - Appellant,

versus

MUNDY CONTRACT MAINTENANCE INC,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas
No. 4:03-CV-5221

_____

Before BARKSDALE, STEWART, and CLEMENT, Circuit Judges.

PER CURIAM:[*]

In this employment discrimination case, Zealous Jones Mayberry III ("Mayberry")

appeals a summary judgment in favor of defendant-appellee Mundy Contract

Maintenance, Inc. ("Mundy"). For the following reasons, we affirm.

## I. FACTS AND PROCEEDINGS

_____

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Mayberry, a black male, was a long-time employee of Mundy; at the times relevant to this case, he served as a foreman at a chemical plant in Texas. In November 2000, Mayberry and another employee, William Jones, were stopped in the plant parking lot after a security guard saw the two exchanging what Mayberry claimed was an old photograph of Mayberry's cousin, who was Jones's girlfriend. In violation of company policy, Jones refused to allow the guard to search his car and was terminated the next day. In Jones's subsequent Title VII suit against Mundy, Mayberry testified that the two had met to exchange a picture. Mundy moved for and was granted summary judgment in Jones's case. *See Jones v. Mundy Contract Maint., Inc.*, No. 4:01-CV-2007 (S.D. Tex. July 9, 2003).

In 2002, another Mundy employee, Rhonda Simpson, informed supervisors that she had learned in 2000 that the exchange in the parking lot had been part of a football gambling pool prohibited by company policy. She also reported that Mayberry later brought internal Mundy documents to a meeting at a local bar and agreed to testify favorably in Jones's suit in return for a share of any damages Jones might be awarded. Mundy launched an internal investigation that confirmed some relevant portions of Simpson's story. In December 2002, after Mayberry refused to respond to questions from company investigators, Mundy terminated his employment for providing false information in the Jones matter.

In November 2003, Mayberry sued Mundy in federal court, alleging violations of Title VII. On cross-motions for summary judgment, the district court granted Mundy's

2

motion. *See Mayberry v. Mundy Contract Maint., Inc.*, No. 4:03-CV-5221, 2005 WL 1965956 (S.D. Tex Aug. 16, 2005).  Mayberry timely appealed.

## II. STANDARD OF REVIEW

We review the district court's grant of summary judgment de novo.  *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003).  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(c).  When reviewing a grant of summary judgment, we apply the same standard as the district court and construe all facts and inferences in the light most favorable to the non-moving party. *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005).

## III. DISCUSSION

Mayberry alleges race discrimination, disparate impact, and retaliation, all in violation of 42 U.S.C. §§ 1981, 1983, and 2000e-2.[1]

## A.    Intentional Discrimination

Employment discrimination under Title VII or § 1981 can be established through either direct or circumstantial evidence.  *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001).  Mayberry has offered no evidence of direct discrimination, and therefore

---

[1]In the district court, Mayberry also alleged violations of several federal constitutional amendments; infractions under TEX. LAB. CODE §§ 21.055 and 451.001; and common-law fraudulent misrepresentation. On appeal, Mayberry failed to brief any of these issues; they are waived. *See Rutherford v. Harris County*, 197 F.3d 173, 193 (5th Cir. 1999).

3

his claim is properly analyzed under the familiar standard of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). To prevail, a plaintiff must establish a *prima facie* case from which discrimination may be inferred. *Laxton v. GAP, Inc.*, 333 F.3d 572, 578 (5th Cir. 2003). The burden then shifts to the defendant to articulate a non-discriminatory reason for the employee's termination. *Id.* If the defendant sustains its burden, the plaintiff must then establish either that (1) the employer's reason is a pretext or (2) the employer's reason, while legitimate, is only one motive for the action, some other motive being discrimination based on a protected characteristic. *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004). If mixed-motive is shown, the employer must then show that it would have taken the same action regardless of the discriminatory motive. *Id.*

The district court found that Mayberry had established a *prima facie* case of discrimination, that Mundy had articulated a non-discriminatory reason for Mayberry's termination (false testimony in an internal investigation), and that Mayberry had failed to show that Mundy's proffered reason was pretextual. On appeal, Mayberry attempts to raise doubts as to the veracity of Simpson's statement concerning the events in the plant parking lot and the plan to support Jones's suit with false testimony. However, all Mundy needed to show, after the burden shifted to it, was that, in good faith, it believed the information Simpson provided and based its decision on that information rather than some discriminatory motive. It is irrelevant whether the decision was correct or the information true. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) ("The question is not whether an employer made an erroneous decision; it is whether the

4

decision was made with discriminatory motive."). An internal investigation corroborated some relevant parts of Simpson's statement. When Mundy gave Mayberry an opportunity to rebut Simpson's statement, he refused and subsequently was dismissed. Mayberry has offered no evidence to suggest that Mundy's belief that he gave false information was not formed in good faith. At best, his arguments raise "only a weak issue of fact as to whether the employer's reason was untrue, and there [is] abundant and uncontroverted evidence that no discrimination occurred." *Laxton*, 333 F.3d at 578. This showing is not enough to satisfy his burden.[2]

## B. Disparate Impact

Disparate impact claims involve facially neutral employment policies that create such statistical disparities disadvantaging members of a protected class that make the policies "'functionally equivalent to intentional discrimination.'" *Munoz v. Orr*, 200 F.3d 291, 299 (5th Cir. 2000) (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 987 (1988)). To establish a *prima facie* case of disparate impact, a plaintiff must (1) identify the challenged employment policy, (2) demonstrate a disparate impact that policy has on a protected class, and (3) demonstrate a causal relationship between the identified practice and the disparate impact. *See Gonzales v. City of New Braunfels*, 176 F.3d 834, 839 n.26 (5th Cir. 1999). Mayberry has offered no evidence that the policy in question—making employees who falsify information in an internal investigation liable for dismissal—affects

---

[2]For the first time on appeal, Mayberry attempts to raise a mixed-motive argument to establish pretext. Since this argument was not presented to the district court, we will not consider it. *See In re Quenzer*, 19 F.3d 163, 165 (5th Cir. 1993).

a protected class in a disproportionate manner.

## C.     Retaliation

To establish a claim for retaliation under Title VII or § 1981, a plaintiff must demonstrate that (1) he engaged in a protected activity, (2) the employer took an adverse employment action against him, and (3) there was a causal connection between the protected activity and the adverse action. *Mota v. Univ. of Tex. Houston Health Sci. Ctr.*, 261 F.3d 512, 519 (5th Cir. 2001). Retaliation claims under Title VII and § 1981 are analyzed under the *McDonnell Douglas* burden-shifting scheme. *See Rios v. Rossotti*, 252 F.3d 375, 380 (5th Cir. 2001). Therefore, if the plaintiff establishes a *prima facie* case of retaliation, the burden shifts to the defendant to show a legitimate, non-discriminatory reason for the action. *Id.* If the defendant offers a legitimate reason, the burden then shifts back to the plaintiff to show that the defendant's stated reason is pretextual. *Id.* Ultimately, the plaintiff must show that "but-for" the protected activity, the adverse action would not have occurred. *Id.*

Mayberry claims that he was fired for the protected activity of testifying in Jones' case, and for his attendance at the meeting at a local bar in which employees discussed employment practices at Mundy. As the trial court noted, however, these activities took place some two years before his termination; the lapse in time is too long to establish causation. *See Clark County Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) ("The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima

6

facie case uniformly hold that the temporal proximity must be very close." (internal quotation omitted)). Similarly, assuming Mayberry's February 2002 deposition testimony in the Jones case was a protected activity, it was too attenuated from Mayberry's December 2002 discharge to satisfy a *prima facie* case. *See Raggs v. Miss. Power & Light Co.*, 278 F.3d 463, 472 (5th Cir. 2002) (finding, in a Title VII case, that a five-month period, standing alone, cannot establish a *prima facie* retaliation claim). But even if *prima facie* causation could be established, Mundy has established a legitimate, non-discriminatory motivation for Mayberry's dismissal: that he falsified information given in an internal investigation. In any event, Mayberry has failed to offer any evidence that his dismissal would not have occurred but for his participation in any protected activity.

## IV. CONCLUSION

We AFFIRM the judgment of the district court.